[S. F. No. 3996.   Department Two.—April 7, 1905.]

## M. STONE, E. A. BRIDGFORD, and W. J. HOTCHKISS, Trustees, etc., Respondents, v. MARY E. HARRIS, Appellant.

LIEN UNDER CONTRACT—TRUST FOR LANDOWNERS IN RECLAMATION DISTRICT—LEVEE SYSTEM—RESOLUTION FOR DISTRICT WORK—LIEN NOT ENFORCEABLE.—Authority given by contract to trustees appointed by landowners in a reclamation district to complete and maintain a levee system provided for therein, and to assess the cost and foreclose a lien therefor, does not include a lien for the performance of any distinct obligation not incidental to the levee system described, nor authorize the enforcement of any lien for the cost of construction of a ditch and pumping plant and operation of the plant, granted to the trustees by subsequent resolution of the landowners, not referring to the original contract, and not providing for any distinct lien therefor, though the owners are under an implied obligation to pay the costs thereof.

ID.—CONSTRUCTION OF CONTRACT—POWER GIVEN TO OWNERS—WORK INCIDENTAL TO LEVEE SYSTEM.—A clause of the contract giving to the trustees power to act as may be directed by a majority of the owners in acreage cannot be construed to empower such majority to authorize a lien for any work not incidental to the levee system described in the contract. The expenditures for the pumping plant and ditch, authorized by resolution of the owners, were not incidental to such levee system.

ID.—FORECLOSURE OF LIEN—PLEADING—DEMURRER IMPROPERLY OVERRULED—REVERSAL OF JUDGMENT—DIRECTION TO COURT.—Where a demurrer to the complaint seeking the foreclosure of an assessment, including the work done upon the ditch and pumping plant, was improperly overruled, and the judgment of foreclosure is erroneous, it will be reversed, with direction to sustain the demurrer with leave to amend the complaint.

APPEAL from a judgment of the Superior Court of Contra Costa County.   William S. Wells, Judge.

The facts are stated in the opinion.

John T. Carey, for Appellant.

Hudson Grant, and E. A. Bridgford, for Respondents.

CHIPMAN, C.—This is an action to recover judgment for the sum of $434.40, being defendant's proportion of an assess-

ment levied by plaintiffs as trustees upon the land embraced in Sand Mound Reclamation District No. 1, Contra Costa County, and to have the same declared to be a lien on defendant's land and for the sale thereof "in the usual way according to the practice of this court in such cases made and provided to satisfy said lien" and "for such other relief as may seem meet," etc. A demurrer was overruled, and, defendant refusing to answer, plaintiffs had judgment "for the sum of $275.40, which sum is, by virtue of the agreement set forth in said amended complaint, a valid lien upon the lands and premises." The usual foreclosure sale was adjudged. Defendant appeals from the judgment.

It appears from the amended complaint that certain landowners in Contra Costa County, including defendant, being desirous of reclaiming their lands from the tide overflow, on April 23, 1894, entered into an agreement in writing, fully set forth in the complaint. There was an old levee then in existence and what is referred to as the new levee also partly constructed, and the agreement contemplated the extension and completion of this new levee so as to join the old levee, also the "building up and repairing a certain old levee and thereafter maintaining the entire levee system, reclaiming and inclosing the lands hereinbefore designated." In consideration of the benefits to accrue to each of the parties and of their mutual covenants contained in the agreement, it was agreed that "three trustees shall be appointed by a majority of the owners in acreage of said lands, who shall hold their office during the life of such majority." It was made the duty of the trustees (any two of whom might act) "to execute the objects and purposes of this contract, and, when they shall have accepted their appointment, they shall by virtue of their office become and be the agents and attorneys in fact of all the parties to this agreement with power to act as herein provided, or as may be hereinafter directed by a majority of the owners in acreage of said lands." The trustees were given power to "select, appoint, and control a superintendent of the work herein provided to be done." The trustees were to serve without compensation. It was agreed that the "new levee shall be fully completed and built up where necessary, along that portion which has been partially constructed, and shall then be extended to and built from the point to which the same is now

built,'' thence to intersect the old levee. Flood-gates in the new levee were provided for, and it was agreed that the trustees should "ascertain the. cost of the work already done upon said new levee, and what it will cost to complete the same to the point of the terminus of said route, with necessary and proper flood-gates.'' Then follows a description of the old levee, with which the new levee was to form a junction. The trustees were given authority "to assess the whole cost of the new levee, both the part completed and the extension to be built as aforesaid, and also the cost of repairing the old levee and of maintaining all levees necessary to protect the entire body of land from overflow, upon each of the parties,'' etc., and each party agreed to pay said amount upon the notice provided to be given. The trustees were granted further power to make contracts for said work "and all the future expenditures and outlays paid out or incurred for the purpose of keeping up the whole system of said levee and every part thereof so as to protect the entire body of swamp and overflowed land mentioned herein, and every tract or parcel thereof from overflow shall be borne and paid for by all the parties hereto and by their successors in interest in said lands. . . . And it is further agreed that when so built up and completed the said levee system, ditches and flood-gates shall be under the control and management of said trustees.'' The covenants were to run with the land. "The debt of any party to this contract, accruing under and by virtue of its provisions shall be a lien upon the lands owned by him within the reclaimed districts and shall continue to be so until such debt is paid,'' and foreclosure of such lien is authorized, "but without further liability'' than for his assessment. There are other provisions of the agreement, but, as they do not bear upon any question raised, they need not be stated. The complaint shows that some changes of ownership of land by the trustees occurred and that plaintiffs became owners and legally elected trustees. It is then set forth that notwithstanding the main-.tenance of the levee system above mentioned it was found that in the rainy season water gathered upon the lands and prevented successful cultivation thereof, and that it became necessary to erect a pumping plant and to construct a large ditch ·across the district into which the water could be collected and drained to the site of said pumping plant; that realizing the

necessity for said ditch, all the owners, including defendant, being present, on July 6, 1901, unanimously passed a resolution at a regular meeting authorizing the construction of said ditch by "the trustees together with Mr. Franks, superintendent." "After the ditch is located the right of way of the same is to be conveyed to the district and thereafter to be under the control of the trustees of said district." The ditch was dug and the right of way conveyed to the district at a cost of $3,550. On November 12, 1901, all the owners, including defendant, unanimously passed a resolution at a regular meeting authorizing the trustees to "procure a good and sufficient pumping plant for the discharge of water to be collected in the ditch now in the course of construction in the district." The trustees erected the pumping plant at the cost of five thousand dollars, and expended $645 for coal to operate the same. It is alleged that defendant was fully advised of these expenditures and made no objection thereto, but encouraged the same. It is also set forth that large expenses were incurred in protecting the levees; that during the fall of 1901 and the spring of 1902 a large amount of dredger work became necessary and additional work in the fall of 1902 "upon said levees to protect the lands of said district against the flood waters which came against said lands." It is then alleged that to pay all the said expenses an assessment of two dollars per acre was levied on December 11, 1901, and on March 24, 1902, another assessment of one dollar per acre, and that the sum due from defendant upon such assessments was $540, and that she has paid the sum of $105.60 thereof, and no more, leaving due and unpaid the sum of $434.40.

The grounds of demurrer are manifold. 1. That the complaint does not state facts sufficient to constitute a cause of action. 2. That the court is without jurisdiction. 3. That the plaintiffs have not legal capacity to sue: (a) Because it does not appear that they are doing business under the name of plaintiffs or an associate name, or have an associate name; (b) because there are a large number of persons, other than plaintiff, interested in the remedy and are not made parties, and it does not appear that plaintiffs are suing for the joint benefit of all parties interested; (c) because all interested parties are not joined as plaintiffs; (d) it does not appear that plaintiffs as trustees of the landowners were authorized

to sue for or collect money for the construction of said ditch
or the purchase of said pumping plant.   4. That there is a
defect of parties plaintiff for much the same reasons as stated
in the preceding paragraph.   5. That several causes of action
are attempted to be set forth, but are not separately stated:
In substance, because the assessment for the work on the levees
is by the agreement payable to the trustees, with which is
united a cause of action for defendant's pro rata of the cost
of the ditch and pumping plant, and this latter is due, if due
at all, only to the landowners; that the agreement confers no
authority on the trustees to levy an assessment for these latter
expenditures, nor does the agreement make them a lien on the
land.   6. For much the same reason several causes of action
have been improperly united.   7 and 8 present no new points.
9. Because of uncertainty in this, that it cannot be ascertained
from the complaint what amount is due for work on the levees
and what amount for the cost of the ditch and the pumping
plant and operating expenses, and for like reasons the com-
plaint is ambiguous.

We do not think there can be any doubt that the agreement
covered all expenditures for building and maintaining the
levee system.   But appellant insists that the resolutions, treat-
ing them as establishing contractual relations between the
parties, formed no part of the agreement of 1894 by which
the trustees were appointed and that the obligations entered
into by virtue of these resolutions created no lien on the land
and did not authorize an assessment to be levied by the trus-
tees and enforced as such under the original agreement.   In
this view we concur.   It is manifest from a reading of the
instrument that the parties thereto were of the belief and so
provided that the levee system would effect the purpose in
view, which was the prevention of overflow of the land by
tide waters.   Ample provision was made for a levee system
and its care and maintenance, but for nothing more.   The
necessity for a main draining ditch across the district and the
erection of a pumping plant seems not to have arisen—at least
was not provided for—until in 1901, six or seven years after
the trust agreement was entered into.

No reference to the original agreement was made in the
resolutions, nor is there in them the slightest indication that
the cost of the main drainage ditch or of the pumping plant

or of operating the pump was to become a lien on the land, or that the trustees should have power to assess the owners or the land for this cost. There was an implied obligation to pay the cost but no agreement that a lien existed to secure its payment. The lien created by contract of the parties (Civ. Code, sec. 2881) does not of itself exist "for the performance of any other obligation than that which the lien originally secured." (Civ. Code, sec. 2891.) The original agreement was not altered by any contract in writing nor by any executed oral agreement having reference to it. (Civ. Code, sec. 1698.) As a special lien it could be enforced only "for the performance of the particular act or obligation" for which it was held, "and of such obligations as may be incidental thereto." (Civ. Code, sec. 2875.) If the owners had deemed the drainage ditch and pumping plant as incidental, they would not have otherwise construed the agreement, as may be inferred from their having subsequently, when the necessity arose, passed the resolutions creating the new obligation. Nor do we think the cost of this latter work can be regarded as incidental to the levee system which was the specific and only work mentioned in the trust agreement. Respondents contend, however, that in the clause giving the trustees the "power to act as herein provided, or as may be hereinafter directed by a majority of the owners in acreage of the land," the word "hereinafter" is meaningless, and should be either rejected or construed to mean "hereafter," so as to effectuate the purpose contemplated, which was reclamation. Such a construction, if made to include expenditures other than such as pertain to the levee systems, would remove all limitations from the agreement and subject the lands to whatever lien burdens a majority of the landowners might decide were necessary for the reclamation of the land, and this, too, in disregard of what manifestly was deemed by the owners to be the only means necessary to be adopted when they made the agreement. This instrument bears the impress of careful and intelligent preparation, and seemingly was intended, as its terms indicate, to limit the reclamation work to the levee system and such work as might properly be said to be incidental. The means and method being thus clearly pointed out, would, upon familiar principles, exclude other means and methods.

We are clearly of the opinion that no authority is shown for

levying an assessment upon the land to meet the cost of the pumping plant and the main ditch connected with it, nor is any authority shown for making such assessment a lien on the land and foreclosing it, as the decree does. It does not appear just what the expenditures were, other than the cost of digging the main ditch, the cost of the pumping plant and some cost in operating it. Manifestly, however, the principal items of expenditures included in the decree, and the only ones specified, relate to the pumping plant and the main ditch. This, we think, was error, and requires a reversal of the judgment.

The other questions presented by the demurrer may or may not arise in the subsequent proceedings, and we, therefore, express no opinion upon them.

It is advised that the judgment be reversed, with directions to sustain the demurrer, with leave to plaintiffs to amend the complaint if so advised.

Harrison, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to sustain the demurrer, with leave to plaintiffs to amend the complaint if so advised.

Lorigan, J., Henshaw, J., Angellotti, J.

Hearing in Bank denied.