[L. A. No. 2641.    Department Two.—November 8, 1911.]

F. W. WHITTIER, Appellant, v. HOME SAVINGS BANK OF LOS ANGELES (a Corporation), et al., Respondents.

CONTRACTS FOR STREET WORK — ASSIGNMENTS TO SECURE ADVANCES — ORDERS FOR CEMENT WORK — ADVANCES TO CEMENT WORKER TO COMPLETE STREET WORK—PAROL CONTRACT—PRIORITY OVER ORDERS. —Where a contractor had agreed to improve five city streets, and a personal defendant and a savings bank had taken assignments of part of the contracts to secure advances to the contractor, and thereafter the plaintiff made a sub-contract to do the cement work and took orders for payment from the contractor on the assignees, which were accepted for whatever the equity of the contractor might be, and owing to the failure of the contractor to complete the work, the assignees agreed to advance twenty-six hundred dollars to the cement worker to complete the contract, under a parol agreement that such advance should be repaid from the first collections under the contract, such advance has priority of payment over his orders from the contractor.

ID.—RULE AS TO PAROL PROOF—EXCEPTIONS AS TO COLLATERAL AGREEMENT.—The rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent and which does not purport to affect the terms of the instrument. It is held that the consent to the repayment of the twenty-six hundred dollars which enabled plaintiff to complete the work and thus protect his own security and that of the assignees who had made the advance, was a most natural collateral agreement, which did not need to be in writing.

ID.—ORIGINAL ASSIGNMENT TO SECURE FUTURE ADVANCES—NOTES OF CONTRACTOR TO BANK.—Where the original assignment to the bank by the contractor was to secure future advances, additional notes by the contractor to the bank for further advances were secured by the assignment and are a charge in favor of the bank having priority over the orders given by the contractor to the cement worker upon final settlement.

ID.—SMALL JUDGMENT RECOVERED AGAINST BANK DEFENDANT.—Where the plaintiff sued for money had and received and recovered a small judgment against the bank, where it appears that such bank received all the moneys collected under the contracts for street work, the judgment was properly limited thereto, and was not entitled to run against any other defendant that had no participation in any assets due to the plaintiff.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Crouch & Crouch, for Appellant.

Scarborough & Bowen, and H. M. Barstow, for Respondents.

MELVIN, J.—Plaintiff sued for something over six thousand dollars on a count for money had and received to his use and benefit. Judgment was given in his favor against the Bank of Los Angeles for $428.51. From this judgment he appeals.

The Tamped Oil Roads Company (a corporation) had entered into contracts to improve five streets in the city of Los Angeles known as Budlong Avenue, Griffin Avenue, Matthews Street, Scott Street, and Montana Street. Defendant S. A. McCready had loaned to the corporation certain sums of money and had taken as security for such loans assignments of certain of the contracts with the city. Subsequently the defendant Bank of Los Angeles made loans to the Tamped Oil Roads Company and took assignments of the same contracts, subject, however, to the claims of S. A. McCready. During the progress of the work F. W. Whittier, the plaintiff in this action, was awarded the contracts for the cement work upon all of these streets. In payment of his claims for such work, orders were given by the Tamped Oil Roads Company to Whittier. Four of these orders were dated October 31, 1908, and by each of them S. A. McCready and the Bank of Los Angeles were instructed to turn over to F. W. Whittier sufficient bonds to cover the bill of Whittier for the work done on the street mentioned in the order, the approximate amount being specified in each demand respectively as follows: $1,046.90 for Budlong Avenue; $1,107.54 for Griffin Avenue; $1,084.60 for Matthews Street; and $2,948.44 for Montana Street, amounts

aggregating $6,187.48.  On each claim the proper officer of the Bank of Los Angeles wrote, "The above order accepted for whatever the equity of the Tamped Oil Roads Company may be."  These acceptances were written on the date of the orders themselves, October 31, 1908.  Some time in December, 1908, the Tamped Oil Roads Company gave to Whittier a similar order for cement work done on Scott Street.  The amount demanded was $3,956.55 and the order was accepted precisely as the others had been.  It will be seen that orders aggregating something over ten thousand dollars had thus been provisionally accepted by the Bank of Los Angeles prior to the year 1909.  Before the acceptances of October 31, 1908, McCready and the Bank of Los Angeles had advanced to the Tamped Oil Roads Company on its interest-bearing notes, secured by assignments of contracts, sums amounting in all to approximately fifteen thousand dollars.  Between that date and December 12, 1908, the Tamped Oil Roads Company gave to the Bank of Los Angeles its notes for sums which amounted in the aggregate to fifteen hundred dollars.

By March 1, 1909, it had become apparent that the Tamped Oil Roads Company was insolvent and unable to complete its contracts with reference to Montana and Scott streets, and on that day an agreement was made whereby Whittier undertook to finish the work on said streets.  This contract was in writing. In it the Tamped Oil Roads Company, McCready, and the Bank of Los Angeles appeared as parties of the first part and Whittier as the party of the second part.  It recited the existence of the contracts for the work on the two streets; specified that McCready and the Bank of Los Angeles had certain interest in said contracts for money loaned for constructing said work; recited that the work had not been fully accomplished; and declared that the parties of the first part desired Whittier to complete the contracts for the street work.  Then follows Whittier's engagement to do the work for the sum of twenty-six hundred dollars.  It was further agreed that this contract should in no wise affect or change the rights of Whittier under his arrangement with the Tamped Oil Roads Company to furnish the cement work for the two streets.  The work under this agreement was done by Whittier and he was paid twenty-six hundred dollars furnished by the Bank of Los Angeles and McCready in equal portions.  This money was ad-

vanced ostensibly to the Tamped Oil Roads Company on the note of Thomas S. Hutton, its general manager, and was secured by a pledge of the capital stock of the company.

On August 6, 1909, the plaintiff owed the Bank of Los Angeles and McCready $3,244.51, and this indebtedness was paid on that date at Whittier's request from the proceeds of the Scott-Street contract. On August 9, 1909, the Tamped Oil Roads Company gave the Bank of Los Angeles written instructions, which were in part as follows:—

"We desire, direct and instruct that the various obligations of the Tamped Oiled Roads Company to S. A. McCready and to your bank, be paid (so far as the funds remaining after the reservations below mentioned will permit) in the order of their dates—the oldest first.

"In the application of the various funds of the Tamped Oiled Roads Company now in your hands and yet to be received by you, to the payment of your various indebtednesses, you will pay the said indebtednesses from the following sources:—

"1. Take all but $1046.90 of the proceeds of Budlong Ave.

"2. Take all but $1107.54 of the proceeds of Griffin Ave.

"3. Take all but $1084.60 of the proceeds of Matthews St.

"4. Take all but $2948.44 of the proceeds of Montana St.

"These various reservations are for the purpose of paying the orders of Mr. F. W. Whittier, dated October 31, 1908.

"If, after making the above applications and reservations, there should be an unpaid balance on the Tamped Oiled Roads Company's indebtedness to you incurred prior to October 31, 1908, then you shall pay any such deficiency thus remaining. from the amounts above reserved for F. W. Whittier."

Appellant's principal contentions are: 1. That plaintiff's orders should have been given priority over the twenty-six hundred dollars advanced March 1, 1909, for the completion of the work on Montana and Scott streets; and, 2. That they should have taken precedence also of the notes, aggregating fifteen hundred dollars, given to cover advances made after the provisional acceptances of the orders of October 31, 1908. On the trial witness Callander, who was an officer of the Bank of Los Angeles, testified, over appellant's objection, that at the time of the making of the contract with Whittier for the completion of Scott and Montana streets there was a parol agreement between the parties to the written contract that the

twenty-six hundred dollars advanced by McCready and the bank for the purpose of paying appellant should be repaid from the first collections that might come in for the finished work upon those two streets. Appellant insists that the admission of evidence of such parol agreement was in violation of sections 1624, 1625, and 1698 of the Civil Code and section 1856 of the Code of Civil Procedure. As there was at the date of the written agreement sufficient money in the possession of the Bank of Los Angeles collected on work performed on the four streets, exclusive of Scott Street, to pay all of appellant's claims covered by the orders of October 31, 1908, appellant contends that this money was equitably his own and that any agreement whereby he should be obligated to permit the repayment of the note signed by Hutton out of that fund, would necessarily be in writing in order that it might be available against him; and that the introduction of parol testimony to establish such a contract is an endeavor to make him responsible for the "debt, default or miscarriage" of another by proof of a verbal agreement. (Civ. Code, sec. 1624, subd. 2.) Respondents' answer to this is that Whittier's orders were accepted subject to the equity of the Tamped Oil Roads Company, and that he took the acceptances with full knowledge that there might not be any surplus to which such orders could attach. On October 19, 1908, when the bank made a loan on a note from the Tamped Oil Roads Company for thirty-five hundred dollars accompanied by a second assignment of all contracts theretofore assigned, there was also a separate written assignment of the Scott Street and Matthews Street contracts which was "given as a partial security for a loan made by the Bank of Los Angeles to the Tamped Oil Roads Company," said loan bearing even date therewith. At the same time there was a verbal agreement between the same parties that advances should be made if necessary up to five thousand dollars secured by the contracts so assigned. Such verbal agreement was not one by which the terms of the written contract were sought to be varied but, as the court below aptly said, was admissible in evidence "to show a separate agreement about *collateral* on the loans thereafter to be made." When Whittier presented his orders for acceptance, he was informed of the engagement of the bank to furnish further sums for the completion of the contracts. There was ample testi-

mony upon this point and it was not improperly admitted as varying the terms of the conditional acceptance, because that writing itself could not be understood without an explanation of the equities involved.  Mr. Pirtle, an officer of the bank, testified that in informing Mr. Whittier why the bank would not accept his orders except subject to the prior repayment of money loaned the contractor: "We told him it was because of the money due from the Tamped Oil Roads Company to Mr. McCready and the Bank of Los Angeles, and that we didn't know how much money it would require to complete those streets; that we couldn't tell what amount of money the Tamped Oil Roads Company would have over and above the amount furnished to complete them; consequently we couldn't put ourselves in the position of assuming something, or accepting something, unless we knew that the money would be coming in to pay it."  We think, in view of this testimony, that Whittier and the defendant Bank of Los Angeles contemplated an acceptance applicable only to the equities which might exist at the completion of all the contracts.  Therefore, we cannot regard Whittier as the equitable owner of the unapplied moneys collected and held by the bank when he made the verbal contract of March 1, 1909, that the twenty-six hundred dollars advanced should be repaid from the first collections for the finished work on the streets.  It was necessary to the preservation of the security of the bank, McCready, and appellant that the street work should be finished and it was in view of their common interest that the written contract of March 1, 1909, was made.  But appellant most emphatically insists that any verbal contract made at that time must have been merged in the written agreement (Civ. Code, sec. 1625) and that the verbal agreement, if made, was of no avail because it sought to alter the terms of a written contract.  (Civ. Code, sec. 1698, and Code Civ. Proc., sec. 1856.)  This would undoubtedly be true if the written contract dealt in any way with the matter of the recoupment of the bank and McCready for their outlay of twenty-six hundred dollars; but it does not treat of that subject.  It is in its essence merely an engagement on the part of Whittier to finish the work on two streets and the promise of the other parties to pay him twenty-six hundred dollars.  He fulfilled his engagement and they performed their promise.  In support of his position appellant

cites such cases as *Harrison* v. *McCormick*, 89 Cal. 328, [23 Am. St. Rep. 469, 26 Pac. 830]; *Gardiner* v. *McDonogh*, 147 Cal. 315, [81 Pac. 964]; *Germain Fruit Co.* v. *Armsby Co.*, 153 Cal. 586, [96 Pac. 319]; *Beall* v. *Fisher*, 95 Cal. 568, [30 Pac. 773]; *McDonald* v. *Poole*, 113 Cal. 438, [45 Pac. 702]; and *Stone* v. *Harris*, 146 Cal. 555, [80 Pac. 711]. The first three of these are all cases in which evidence was offered to show sale by sample of commodities mentioned in written contracts, and this court held that such evidence was not admissible to vary the terms of written contracts. The fourth case was one in which a judgment was reversed because the plaintiff had been permitted to testify to prior agreements flatly contradicting the terms of a deed which he had accepted from defendant. The fifth case was one in which the price of certain street work was fixed by written contract and defendant sought to establish a different price by oral testimony. *Stone* v. *Harris* was a case in which it was held that "a clause of the contract giving to the trustees power to act as may be directed by a majority of the owners in acreage cannot be construed to empower such majority to authorize a lien for any work not incidental to the levee system described in the contract." Respondent contends that the verbal agreement proven in this case comes under the principle laid down in such cases as *Savings Bank of So. Cal.* v. *Asbury*, 117 Cal. 103, [48 Pac. 1083], in which it was said: "The rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument." (See, also, *Wolters* v. *King*, 119 Cal. 173, [51 Pac. 35]; *Sivers* v. *Sivers*, 97 Cal. 519, [32 Pac. 571]; *Guidery* v. *Green*, 95 Cal. 635, [30 Pac. 786].) We think that this is the correct view of the matter. The consent to the repayment of the twenty-six hundred dollars which had enabled Whittier to complete the work and thus protect his own security and that of the bank and McCready was a most natural collateral agreement and one that did not need to be in writing. The default of their common debtor made it highly desirable for Whittier and the other interested parties to have the work on the streets finished. Plaintiff received twenty-six hundred dollars for the work actually done under the written contract

and accomplished the payment of his notes for more than three thousand dollars from the money collected on the Scott Street work. What more natural than that the creditors whose additional advances made such work possible should desire that their contributions to the common cause should operate as a first lien on the moneys collected from the city? And what more natural than a collateral agreement whereby Whittier should consent to such an arrangement when the advancement by the bank and McCready placed him in a position to make valuable his contingent claims which the default of the original contractor, unless remedied by prompt measures to complete the unfinished work, might have rendered entirely valueless? There was no error in permitting proof of the oral agreement.

What has been said about the repayment of the twenty-six hundred dollars applies in large measure to the notes aggregating fifteen hundred dollars. We have previously discussed plaintiff's knowledge of the fact that the assignment of all contracts for street work as of October 19, 1908, had been made to secure future as well as past advances, and we have shown that his equities were to depend upon and be determined at the time of a final settlement. Therefore, the advances equal to the sum of fifteen hundred dollars, although made after the signing of the provisional acceptances, created liens upon the moneys obtained from the city, and those liens were payable prior to his claims.

Appellant contends that the judgment should have run also against the Home Savings Bank but although it was shown that the Home Savings Bank had taken over certain assets of the Bank of Los Angeles there was no showing that the contracts and collections involved in this suit were among such assigned matters. Nor was there any error in refusing to give judgment against S. A. McCready and A. W. McCready, her attorney in fact, even if it be conceded that the Bank of Los Angeles acted as their agent. A. W. McCready testified positively that he never saw one of Whittier's orders from the Tamped Oil Roads Company until the morning of the trial and doubtless the court believed him. Additionally it must be remembered that this was an action for moneys had and received, and according to the uncontradicted testimony the Bank of Los Angeles had collected all payments made by the

city on contracts for street work. There was no evidence that either of the McCreadys had received any of these moneys.

No further alleged errors require notice.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.