Carmichael v. Arms—51 Ind. App. 689.

# CARMICHAEL ET AL. v. ARMS.

[No. 7,777. Filed December 19, 1912.]

1. LIENS.—Creation by Contract.—To create a lien by contract, express or implied, the language of the contract or the attendant circumstances should clearly indicate an intention of the parties to create a lien on the specific property. p. 694.

2. LIENS.— Equitable Liens.— Creation.—Executory Contract.—An equitable lien depending on a written executory contract based on a valuable consideration may be declared where the intention is clearly indicated to incumber, or appropriate, as security for a debt or other obligation, some particular property or fund therein described. p. 694.

3. LIENS. — Equitable Liens. — Enforcement. — An equitable lien growing out of an executory contract may be enforced against the property therein described in the hands of the original obligor or his heirs, personal representatives, assigns or purchasers with notice. p. 694.

4. CONTRACTS.—Construction.—Intention of Parties.—Liens.—In determining whether a contract creates a lien on property therein described, or merely binds the parties personally, the intention of the parties, where such contract is plain and unambiguous, will be determined by the language employed. p. 695.

5. LIENS.—*Equitable Liens.—Creation.—Power of Courts.*—While courts have the power to declare and enforce liens, either in law or equity, they cannot imply the existence of an equitable lien, where the parties have entered into an unambiguous contract for a personal liability only. p. 695.

6. WATERS AND WATERCOURSES.—*Repair of Levee.—Contract.—Construction.—Liability of Parties.—Liens.*—A contract between separate owners of real estate subject to overflow, providing for the repair of a levee constructed by them and stipulating that the expense of such repairs should be borne in proportion to the amount of land owned by each, that the settlement of the cost and expense of making repairs shall be had within thirty days after completion thereof, that the sum to be paid by each shall be due and payable at the expiration of said thirty days, and that the provisions of the contract shall be binding on them and all their heirs, assigns and successors, does not indicate an intent to make the cost of repairs a lien on the land, but creates merely a personal liability binding on the parties, their heirs, assigns and successors. p. 696.

7. EQUITY.—*Maxims.—Equitable Liens.—Creation.*—The principle that equitable liens arise wholly from considerations of right and justice, and are based upon the particular equitable maxim, that he who seeks the aid of equity in enforcing some claim must himself do equity, has no application where the parties have themselves stipulated for a purely legal liability. p. 696.

8. ACTIONS.—*Contracts.—Personal Liability.—Venue.—Answer in Abatement.—Demurrer.*—Where an action for the enforcement of a contract providing for a personal liability only, was brought against a defendant who was a legal resident in another county, his answer in abatement alleging the place of his legal residence, that the action was not connected with any business or transaction, or any office or agency of defendant in the county where the action was brought, and that defendant had no office or agency in said county, was not subject to demurrer. p. 697.

9. CONTRACTS. — *Actions.—Parties.—Words Descriptio Personae.—Complaint.—Sufficiency.*—Where a contract between separate land owners providing for the repair and maintenance of a levee, made no provision for the employment of a superintendent, but provided that any one of the parties to the agreement may make repairs, and stipulated how the cost should be borne, a complaint in an action thereon by one of the parties to recover from the others their proportion of the cost of repairs made by him, brought by plaintiff "as superintendent" and averring his appointment by the parties as superintendent of the levee with power to make repairs, etc., and showing a liability to plaintiff in his personal capacity, is not demurrable for want of facts or that plaintiff had not legal

Carmichael *v.* Arms—51 Ind. App. 689.

capacity to sue, the words "as superintendent" being merely de-
scriptive of the person.   p. 697.

10.  CONTRACTS.—*Actions.*—*Parties.*—*Necessary Parties.*—Where a
complaint counts on a liability definitely apportioned by contract,
and seeks a recovery against defendant only for the amount due
from him according to the terms of the contract, a third person
who is also a party to the contract and liable thereunder in a
definite amount, is not a necessary party to the action.   p. 698.

11.  PARTIES.—*Defect of Parties.*—*Proper Parties.*—Overruling a
demurrer for defect of parties defendant is not error, where the
alleged defect consisted of omitting one who may have been a
proper, but was not a necessary, party defendant.   p. 698.

12.  VENDOR AND PURCHASER.—*Notice to Purchaser.*—*Constructive
Notice.*—*Actual Notice.*—*Contracts.*—Though the recording of a
contract not required to be recorded does not affect the question
of notice to a grantee of real estate who is sought to be bound
thereby, such contract may be binding on him where he has actual
notice.   p. 699.

13.  PLEADING. — *Accord and Satisfaction.* — *Sufficiency.* — Where a
contract existed between separate land owners for the repair of
a levee, providing that either land owner, on discovery of damage
to the levee, could repair it and that the cost should be appor-
tioned among them in proportion to the amount of land owned
by each, in an action by one, who had made repairs, against
another of such landowners to recover the latter's proportion of
the cost, defendant's answer alleging that he had furnished labor
and material in the repair of a ditch pursuant to plaintiff's agree-
ment to accept same in full payment of the claim sued on and
that plaintiff did accept the same in satisfaction of his claim, was
a good answer of accord and satisfaction, and a proper pleading,
since plaintiff's action was for a personal liability due himself and
the alleged settlement in no way affected the rights of the other
parties to the contract.   p. 699.

14.  PLEADING.—*Counterclaim.*—In an action to recover defendant's
portion of the cost of repairing a levee, pursuant to a contract in
existence between certain landowners providing for such repairs
and the apportionment of the cost among the parties, a pleading
by defendant alleging that he had furnished labor and material
in the repair of a ditch pursuant to plaintiff's agreement to accept
same in full payment of the claim sued on, and that plaintiff did
accept same in satisfaction of his claim and was benefited thereby
to an amount in excess of the demand made in his complaint, was
not good on the theory of a counterclaim.   p. 699.

From Warren Circuit Court; *James T. Saunderson,*
Judge.

Action by Solon A. Arms, as superintendent of the Levee Company, against William P. Carmichael and others. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Edwin F. McCabe,* for appellants.
*William B. Durborow,* for appellee.

Felt, J.—This is an action by appellee against appellant William P. Carmichael, to collect his alleged *pro rata* share of the expense of repairing a certain levee along the Wabash river, and to declare and enforce a lien against his real estate for the amount due.

The suit was begun in the Fountain Circuit Court, and appellant filed a plea in abatement, showing that he and his codefendants were all legal residents of Warren county, Indiana, and that the cause of action was not connected with any business or transaction, or any office or agency of any of the defendants in said Fountain county, and that they had no office nor agency in said county. To this plea appellee filed a demurrer for insufficiency of the facts alleged to abate the action. This demurrer was sustained and appellant Carmichael duly excepted. Said appellant then demurred to the complaint on the following grounds: (1) The court has no jurisdiction of the persons of defendants. (2) The plaintiff has not legal capacity to sue. (3) Insufficiency of facts alleged. (4) Defect of parties in this, that William H. Young should be made a party defendant to answer to his interest in the demand sued on.

The demurrer to the complaint was overruled and exception taken. The cause was venued to the Warren Circuit Court, where a special answer was filed by said appellant, to which the demurrer of appellee was sustained. Said appellant refused to plead further, and the court thereupon rendered judgment against him for $281.47, declared an equitable lien for the amount on his real estate, and ordered the two-thirds part of the same sold to satisfy the judgment, "and to pay and satisfy the equitable lien of the

plaintiff as superintendent, on said real estate.'' The rulings on the several demurrers are assigned as error.

The complaint alleges, in substance, that Solon A. Arms, William H. Young and Isaac N. Sims, on April 5, 1905, were the separate owners of certain tracts of real estate therein described, situate in Fountain county, Indiana; that said real estate was subject to overflow from the Wabash river, and said owners had, at an expense of $10,000 built a levee along said river and on said lands to protect the same from such overflow; that on the completion thereof the aforesaid parties entered into a contract to keep said levee in repair, which, in substance, provided that such expense should be borne in proportion to the amount of land owned by each, which was as follows: Young thirty-nine per cent; Sims forty-three per cent, and Arms eighteen per cent. The contract then provides as follows:

> ''Whenever any of said parties, their successors or assigns, discover any break or damage done to said levee, that party shall proceed, with all reasonable haste and speed, to cause the same to be repaired. * * * It is further agreed that a settlement of the cost and expense of the making of said repairs shall be had within thirty days after the completion thereof, and the money due the person having charge thereof, and his agents and employees, shall become due and payable at the expiration of said thirty days. All parties hereto agree that the terms and provisions of this contract shall be binding upon them and all their heirs, assigns and successors.''

It is further averred that said instrument was, by agreement of the parties thereto, recorded in the miscellaneous records of the recorder's office in Fountain county, Indiana; that on October 21, 1905, said Sims and wife duly conveyed their said real estate to appellant Carmichael ''with full knowledge *of the terms*'' of said contract.

The plea in abatement raises the question whether the facts stated in the complaint are sufficient to show the existence of a lien on the real estate of said appellant in

Fountain county, and thereby justify the filing of the suit in that county, notwithstanding the defendants all resided in *Warren county*.

Assuming that the existence of an equitable lien for the proportionate part of the expense of repairing the levee alleged to be due from said appellant would be sufficient to justify the filing and maintenance of the suit in Fountain county, we must first determine whether the facts alleged are sufficient to show the existence of such lien.

In order that a lien may be created by contract, express or implied, it is generally necessary that the language of the contract or the attendant circumstances should clearly indicate an intention of the parties to create a lien on the specific property. Where the equitable lien depends on the terms of an executory contract in writing based on a valuable consideration, the lien may be declared where the intention is clearly indicated to incumber or appropriate, as security for a debt or other obligation, some particular property or fund therein described, and such lien may be enforced against such property in the hands of the original obligor or his heirs, personal representatives, assigns or purchasers with notice. 25 Cyc. 664 *et seq.;* 19 Am. and Eng. Ency. Law 12 *et seq.; Elmore* v. *Symonds* (1903), 183 Mass. 321, 67 N. E. 314, 317; *Knott* v. *Shepherdstown Mfg. Co.* (1888), 30 W. Va. 790, 795, 5 S. E. 266; *Stone* v. *Harris* (1905), 146 Cal. 555, 560, 80 Pac. 711; *American Pin Co.* v. *Wright* (1900), 60 N. J. Eq. 147, 46 Atl. 215, 217; *Cameron* v. *Sexton* (1903), 110 Ill. App. 381, 386; *Hamilton* v. *Downer* (1894), 152 Ill. 651, 38 N. E. 733; *Meyer* v. *Quiggle* (1903), 140 Cal. 495, 74 Pac. 40; *Picquet* v. *M'Kay* (1831), 2 Blackf. 465, 467; *Brown* v. *Budd* (1850), 2 Ind. *442, *444.

The language of the contract seems plain and unambiguous, and indicates that the obligation to pay for repairs was personal and against the owners of the several tracts of

real estate or those succeeding to such right of owner-

4. ship. Such contract is to be construed as any other written agreement. The intention of the parties is to be determined from the language employed. *Straus* v. *Yaeger* (1911), 48 Ind. App. 448, 93 N. E. 877, 882. There are no facts or circumstances in this case that call for the application of other rules of construction, or justify resort to other means than the language of the instrument itself to determine the intention of the parties with respect to the character of the liability therein stipulated.

The court cannot imply the existence of an equitable lien where the parties have entered into an unambiguous contract providing for a personal liability only, and especially

5. in the absence of allegations sufficient to change or modify the application and effect of the contract. *Randel* v. *Brown* (1844), 2 How. *406, *424, 11 L. Ed. 318; *Gibson* v. *Stone* (1864), 43 Barb. (N. Y.) 285, 291; *Knott* v. *Shepherdstown Mfg. Co., supra,* 796; 3 Pomeroy, Eq. Jurisp. §1241.

In *Knott* v. *Sheperdstown Mfg. Co., supra,* on page 795, after referring to the general rule under which an equitable lien may be declared according to the provisions of an express executory agreement in writing, the court said: "Broad as this doctrine is here stated to be, it falls far short of any principle that would create a lien out of the obligation here in question. It shows no intention, either express or implied, on the part of the contracting party to convey, transfer, or assign any property as security. The express and only intent declared is that the company will insure its buildings, machinery, etc., and transfer the policies to the plaintiff 'as additional security for this obligation.' The express intention is so definite and exclusive that it leaves no possible ground for implying any other intention or purpose." Again, on page 796, it is said: "The covenant not to incumber the property it seems to me, is clearly one for the breach of which the remedy at law is not only ade-

quate but peculiarly appropriate. The damages, if any, must be the loss of the plaintiff's debt or some part of it, and to fix these damages is the peculiar province of a jury. It may be said that this remedy is inadequate by reason of the insolvency of the company, but the reply to this objection is that courts do not provide the means to pay debts, but only the means of enforcing their payment. Whether the debtor is solvent or insolvent is immaterial. The rules of law are the same in either case." The theory of the complaint in this case is clearly that of an equitable lien created by contract. If the intention to give a lien for the cost of repairs to the levee is not apparent from the terms of the instrument, no lien exists.

In *Lyster's Appeal* (1884), 54 Mich. 325, 20 N. W. 83, it is said: "Courts cannot create liens. They can only declare and enforce them when they exist, either in law or equity." See, also, *Frost* v. *Atwood* (1888), 73 Mich. 67, 41 N. W. 96, 16 Am. St. 560, 563.

The liability fixed by the contract is personal, for its provisions are made binding on the parties, their heirs, assigns and successors, and the language employed does not
6. indicate an intention to make the cost of repairs a lien on the land. 3 Pomeroy, Eq. Jurisp. §§1234-1237; *Sewell* v. *Drake* (1905), 85 S. W. (Ky.) 748; *Society of Shakers* v. *Watson* (1895), 68 Fed. 730, 738, 15 C. C. A. 632, 640.

In 3 Pomeroy, Eq. Jurisp. §1238, after a discussion of the subject of equitable liens by express contract, it is said: "The class of equitable rights and liabilities which
7. at law are referred to the fiction of 'implied contract' really exist *ex aequo et bono;* they arise wholly from considerations of right and justice, and from the application to particular conditions of fact of those maxims which lie at the foundation of equity jurisprudence." It is further stated in 3 Pomeroy, Eq. Jurisp. §1239, that

such liens are based "upon the particular equitable principle that he who seeks the aid of equity in enforcing some claim must himself do equity." This principle has no application where the parties have themselves stipulated for a purely legal liability and the suit is on such obligation.

This suit is wholly unlike cases where the owner of the property, or the one benefited, is invoking the aid of a court of equity, and can therefore be compelled to do equity, or where there is some element of fraud in the transaction which warrants equitable interference. 3 Pomeroy, Eq. Jurisp. §§1241, 1242 and notes; *Greene* v. *McDonald* (1902), 75 Vt. 93, 53 Atl. 332, 333; *Williams* v. *Vanderbilt* (1893), 145 Ill. 238, 34 N. E. 476, 479, 21 L. R. A. 489, 36 Am. St. 486; *Kelly* v. *Kelly* (1884), 54 Mich. 30, 19 N. W. 580, 588.

8. There being no basis for a lien under the contract relied on, the court erred in sustaining the demurrer to the plea in abatement.

In view of our ruling on the plea in abatement, we might well refuse to pass on the other questions presented, but the probability of the trial of this, or another suit based on the same transactions has constrained us so to do.

The contract itself makes no provision for the employment of a superintendent, but provides that any one of the parties to the agreement may make repairs, and that 9. the cost shall be borne as above indicated. The complaint avers that appellant Carmichael and the other landowners by mutual consent appointed appellee superintendent of the levee, with full power to make "all necessary repairs thereto; employ labor, obtain materials and conduct the work thereon." It is further charged that in the spring of 1908 and again in the fall of that year it became necessary to employ labor and secure material to repair the levee; that appellee "by virtue of his appointment as superintendent aforesaid and by virtue of the power

conferred on him by the terms of said contract, at once proceeded'' to make the necessary repairs by and with the advice, knowledge and consent of said Young and said appellant; that to prosecute said work appellee borrowed a large amount of money and expended it in making said repairs; that the aggregate cost of the repairs was $721.08, and appellant Carmichael's proportionate part thereof was forty-three per cent, or $301.13; that he was entitled to a credit of $49.80 for labor and material furnished, leaving a balance due of $251.33, for which demand was duly made and payment refused before the. bringing of this suit. An itemized account of the expenditures was filed with the complaint. The complaint is sufficient to show a liability in favor of Solon A. Arms, personally, and the words ''as superintendent'' following his name are descriptive of the person only, and do not change the character of the action nor show that appellee had not the legal capacity to sue. *Morrow* v. *Shober* (1898), 19 Ind. App. 127, 132, 49 N. E. 189; *Marion Bond Co.* v. *Mexican Coffee, etc., Co.* (1903), 160 Ind. 558, 563, 65 N. E. 748; *Ditton* v. *Hart* (1911), 175 Ind. 181, 184, 93 N. E. 961.

The complaint counts on a liability, definitely apportioned by the alleged contract, and seeks a recovery against appellant Carmichael only for the amount due from him 10. according to the terms of the written agreement, and further charges that said appellant purchased his land from said Sims with full knowledge of the terms of said contract, and accepted the benefits and burdens thereof. In view of these allegations, Young, the other party to 11. the contract, was not a necessary party to the suit. The fact that he may have been a proper party is not sufficient to show error. If appellee expended the money as alleged, there was a separate liability against each for his proportionate part thereof, and neither could be held liable except on a showing of an authorized expenditure for the

specified purpose.   Appellant Carmichael's knowledge of the terms of the contract, according to the averments of the complaint, is not constructive, but actual.

It is doubtless true that the recording of the contract in the miscellaneous records of the county where the land is situate does not affect the questions of notice or knowledge on the part of appellant, since the recording of such an instrument is not required or provided by law.  *Kothe* v. *Krag-Reynolds Co.* (1898), 20 Ind. App. 293, 50 N. E. 594; *Reeves* v. *Hayes* (1884), 95 Ind. 521.

It is, however, well settled that an instrument may be binding on the parties and their privies with actual notice, although not entitled to be admitted of record.  *Walter* v. *Hartwig* (1886), 106 Ind. 123, 127, 6 N. E. 5.

Appellant Carmichael's special answer in this case avers, in substance, that said lands protected by the levee were drained by a ditch which had a single outlet which opened through the levee into the river by means of a valve so arranged as to permit the water to pass out, and prevent it passing back through the valvular opening and over the land; that said outlet and ditch were insufficient in size, and great damage resulted, which is particularly stated; that said Arms, as superintendent, agreed to repair and enlarge said ditch and outlet, but failed and neglected so to do; that to protect said land from further damage, and make it tillable, it became necessary to make said repairs and enlarge said opening; that after said appellee had for a long time failed and neglected so to do, said appellant made said repairs and enlarged said outlet, and placed therein an automatic double sewer valve, and make it effective to drain all the lands described in said written agreement; that the benefits to the owners of said lands are in the same proportion as that set out in said contract; that said repairs and enlargement cost $1,700, which was paid by said appellant; that before the re-

pairs were so made by said appellant, appellee agreed to accept said labor and material in full payment and satisfaction of the claim sued on, and said appellant performed all said labor and furnished said materials in pursuance of such agreement; that appellee accepted said labor and material in payment and satisfaction of his said claim; that said lands were benefited by said improvement more than $3,000 per annum, and no part of the cost thereof has been paid to appellant Carmichael. Prayer that so much of said sum be applied to the payment of appellee's claim as may equal the amount due, and that he have judgment for any amount found due him in excess thereof and for all proper relief.

Appellee in his brief says: ''Arms' authority, either by appointment as superintendent or under the contract, is measured by the terms of the original contract and the averments in the complaint, and he has no authority to accept any system of drainage constructed by Carmichael in satisfaction of the amount due from Carmichael.''

It is further pointed out that Young is not shown to have been a party to the alleged accord and satisfaction; that Arms had no authority to do anything except make necessary repairs to the levee and collect the cost thereof according to the contract. It is also contended that the answer is not good as a counterclaim, because the work alleged therein to have been done is no part of the subject-matter of the contract, and therefore the claim set up in the answer does not arise out of the same transaction or relate to the same subject-matter as that sued on in the complaint.

As already pointed out, appellee's suit is for appellant Carmichael's proportionate amount of the alleged cost of repairing the levee. The proportion is fixed by the contract, but the cost of the repairs was necessarily to be established by proof other than the written agreement. Appellee on this complaint could only recover the amount due him personally from said appellant. The answer avers that appellee author-

ized the work alleged to have been done by said appellant; that he agreed to accept the same in payment and satisfaction of the claim sued on, and that after completion of the work he did accept the same in payment and satisfaction of the claim for which he brought this suit. The other averments show the amount alleged to be due said appellant from appellee on account of said work to be in excess of the amount alleged to be due from said appellant for repairs to the levee, and that appellee was benefited to an amount in excess of the demand made in his complaint.

The answer does not proceed on the theory that there was an accord and satisfaction whereby appellee was to accept less than the amount due, but on the theory that he authorized the expenditure, received full value, and after the work was completed accepted it as payment.

As his suit is for a personal liability due to himself, appellee could make such contract of settlement, without reference to the other parties to the agreement, relating to the repair of the levee, and their rights and liabilities would in no way be affected by such settlement.

The answer was not good as a counterclaim, but was good as an accord and satisfaction of the claim sued on, for its averments show an executed agreement for a valuable consideration in payment and satisfaction of the debt alleged to be due appellee. I Cyc. 307 *et seq; Ogborn* v. *Hoffman* (1876), 52 Ind. 439; *Stone* v. *Lewman* (1867), 28 Ind. 97, 99; *Western Union Tel. Co.* v. *Buchanan* (1871), 35 Ind. 429, 442, 9 Am. Rep. 744; *Woods* v. *Harris* (1841), 5 Blackf. 585; *Renihan* v. *Wright* (1890), 125 Ind. 536, 545, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. 249. As above indicated, the words "as superintendent" are only *descriptio personae,* and do not affect the parties nor make the suit other than an action at law to collect the money alleged to be due appellee personally. It was therefore error to sustain the demurrer to appellant Carmichael's special answer.

The judgment is reversed, with instructions to the lower

court to overrule the demurrer to the plea in abatement and for further proceedings in accordance with this opinion.

NOTE.—Reported in 100 N. E. 302. See, also, under (1) 25 Cyc. 664; (2, 3, 6) 25° Cyc. 665; (4) 9 Cyc. 577; (5) 25 Cyc. 667; (7) 16 Cyc. 140; (8) 31 Cyc. 179; (9) 31 Cyc. 99; (11) 31 Cyc. 293; (12) 39 Cyc. 1733; (13) 1 Cyc. 342; (14) 31 Cyc. 226. As to the jurisdiction of equity to enforce liens see 74 Am. St. 387. As to the law of accord and satisfaction, see 100 Am. St. 390.