WHITE ET UX. *v.* SPROWL, TRUSTEE, ET AL.

[No. 13,984. Filed March 25, 1931. Rehearing denied July 1, 1931.]

*R. R. Cummings* and *Fraser & Isham,* for appellants.
*Hume L. Sammons* and *George F. Sammons,* for appellees.

KIME, J.—This was an action in one paragraph by a trustee in bankruptcy to set aside deeds given by appellants to a trustee for the purpose of reconveying and his return conveyance to them, on the theory that it was a fraud on creditors.

There was a special finding of facts with conclusions of law thereon and judgment for the appellee Sprowl, trustee.

The errors relied upon are: (1) Error in each conclusion of law; and (2) the overruling of the motion for a

new trial, which set out, among other reasons, that (a) the decision of the court is not sustained by sufficient evidence, and (b) the decision of the court is contrary to law.

The evidence shows that appellants were married in 1885; that deeds were taken to certain lots in 1895 and 1902 by the husband alone, for a total consideration of $255; that about 1896, they, together, built a one-story house on the realty they owned; that the wife, at that time, put in $500 of her own money that she had earned before marriage by teaching school and after marriage by sewing; that in 1896 or 1897, they engaged in the restaurant business; that they both conducted the business, the wife doing the cooking and waiting on the trade; that the wife worked therein from 5 a. m. until 7 or 8 p. m. and later on Saturdays; this continued until 1910; that the husband gambled and lost money, whereupon, the wife, who was capable of making $15 to $25 per week sewing, told the husband that if she was to continue to work in the restaurant and because she had put in the $500 and 12 years' work, he would have to give her the title to the realty; that in 1907, he gave her a deed; that said deed was never recorded; that in 1910, the restaurant was sold; the same year they added a second story to the house, the wife putting in $200 of her separate estate; in 1913, she expended $550 for a furnace out of her own money; they then re-entered the restaurant business and, for four years, the wife worked as before set out; in 1922 or 1923, after a fire at the home, the wife, at her own expense, put in a basement that cost $250, and hardwood floors at a cost of $250, these two items coming from insurance money of the wife.   In 1923, James W. White was not engaged and had an opportunity to buy a grocery store, and his wife, who had received some money from insurance on her parents, loaned her husband $2,150 on November 14, 1923  taking a note therefor with interest

at seven per cent. In 1928, after the husband failed to pay the taxes then due, the wife told the husband that she would pay the taxes on both real and personal property (including the grocery stock) and paint the house and they would put the property in their joint names; that this was done on May 8, 1928, by deeds from husband and wife to a trustee, who immediately conveyed same back to them; that the Kent State Bank was organized in 1910; that Hume L. Sammons was one of the organizers and a director continuously to the present time; that he made out the deed of 1907 from the husband to the wife; that the husband borrowed from the Kent State Bank on his unsecured note the following sums: January 11, 1924, $500; January 25, 1924, $500; October 19, 1925, $300; January 26, 1926, $200; August 24, 1926, $300; that the total sum of $1,800 was owing to said bank when the realty was transferred; that the wife knew nothing of this debt to this bank; that she knew only of the debt to the Newton County Bank for $1,000, and to the Webster Grocery Company for $382.77; that she had never been asked by any creditor of the husband to sign his note or in any way secure or add any security to any of his indebtedness; that a reasonable value of the realty was $5,500. There was no evidence to show that the creditors, at the time the credit was extended, relied on or extended the credit on the strength of James W. White's being the record title holder of the above realty.

The law is so well settled in this state and many others that a husband may prefer his wife in the payment of claims if she be a *bona fide* creditor that we deem it unnecessary to cite any authorities on this point. There is also a long line of cases holding that to render a conveyance void as to creditors, on the ground that it was made with intent to defraud them, the grantee must have knowledge of, and participate in, the fraud of

the grantor. *Hogan* v. *Robinson* (1884), 94 Ind. 138; *Seager* v. *Aughe* (1884), 97 Ind. 285; *Plunkett* v. *Plunkett* (1888), 114 Ind. 484, 16 N. E. 612, 17 N. E. 562; *Scott* v. *Davis* (1889), 117 Ind. 232, 20 N. E. 139; *State, ex rel.,* v. *Osborn* (1896), 143 Ind. 671, 42 N. E. 921. That being the case, it can surely not be said that Adda V. White (who was the grantee of the transaction that was consummated in 1907) had knowledge of or participated in the fraud, if there was such, of the grantor, for the reason that the present creditors never had any dealings with the appellants until several years after the deed above mentioned was executed.

This brings us to the question of whether or not said Adda V. White is estopped, by reason of her failure to have the deed of 1907 recorded, from asserting her present title to the realty in question. The laws of this state do not require that a deed be recorded in order to make same valid, and the appellant Adda V. White was under no obligation to any one to do so. The third conclusion of law of the trial court was "that the defendant, Adda V. White, by reason of her failure to record the deed of February 20, 1907, and by reason of the fact that people did extend credit to her husband, the defendant James W. White, relying upon his holding the record title to said real estate and being the ostensible owner thereof, all of which facts were well known to Adda V. White is, by her own actions estopped to claim to be the owner of said property by virtue of said deed of February 20, 1907." This conclusion of law would be correct if there was sufficient evidence to uphold the finding of fact upon which said conclusion is based, but, upon a careful examination of the record, we do not find any evidence whatever to show that the credit given and loans made to James W. White were made in reliance of his being the record owner of the realty, and we find that there is a total lack of any evidence to show that

Adda V. White had knowledge that loans and credit were extended by anyone to her husband by reason of the fact that they relied on his having the record title to said real estate.

Inasmuch as there is insufficient evidence to sustain the special finding of facts upon which said third conclusion is based, we must therefore remand this case to the trial court, with instructions to sustain appellant's motion for a new trial.

Reversed.