In the Matter of Harold V. WEBB, Bankrupt.

No. IP57-B-12.

United States District Court
S. D. Indiana,
Indianapolis Division.

Feb. 25, 1958.

546

Stump & Emswiller, by Charles E. Barker and Albert Stump, Indianapolis, Ind., for intervenor.

Bamberger & Feibleman, by Thomas D. Titsworth, Indianapolis, Ind., for Arthur W. Banta, Trustee in bankruptcy.

HOLDER, District Judge.

This is an action brought by Verneice Geraldine Webb against the Trustee in bankruptcy of the estate of Harold V. Webb, a bankrupt. She seeks to have an equitable lien, or a judgment lien adjudicated against the funds derived from the sale of real estate by the Trustee.

The form of Mrs. Webb's proceeding was by way of an intervening petition in a proceeding to sell real estate by the Trustee in the bankruptcy estate of Mr. Webb before the Referee in bankruptcy. Evidence was heard and based thereon findings of facts and conclusions of law were filed by the Referee and judgment was rendered allowing the lien claim of Mrs. Webb on the ground that there was a judgment lien.

The Trustee in bankruptcy timely filed his petition for review to this court, pursuant to 11 U.S.C.A. § 67, of the Referee's findings of facts, conclusions of law thereon and judgment thereon.

The findings of facts, conclusions of law and the judgment of the Referee are hereby vacated and set aside. The briefs of both parties were silent on the issue of whether an equitable lien was created by the transactions of the parties. The parties and Referee's attention was diverted only to the question of whether a judgment lien was created by a divorce decree on October 9, 1954 which merely recited, confirmed, and approved a property settlement contract of August 25, 1954 as modified on October 4, 1954 five days before the divorce decree. The Referee made no findings, conclusions of law, or judgment on the equitable lien issue presented by Mrs. Webb's intervening petition item 6 page 5 which reads in part as follows:

"6. The final total amount to be paid to the intervenor from the proceeds of the sale of the apartment realty represents and reflects the interest the intervenor has in the said real estate and *Constitutes A Lien In Her Favor Against It;* \* \* \*." (Italics added.)

The Referee rendered findings, conclusions of law, and judgment for Mrs. Webb on the basis that there was a valid judgment lien at law resulting from the divorce decree of October 9, 1954. The court finds this action of the Referee to be erroneous since there was no judgment lien at law. The divorce decree merely confirmed and approved the property settlement contract and modification thereof but did not render judgment

thereon as would be necessary to create a judgment lien under the statute of Indiana and to enforce the contracts would require an action based thereon and not an action based on the judgment. Indiana Acts 1881 (Spec.Sess.) ch. 38, §§ 587, 601, 857(11), p. 240, as amended 1929, ch. 83, §§ 1, 2, p. 278 (§§ 2–2520, 2–2706, 2–4701(11) Burns' Ind.Stat.Anno. (1946 Repl.); Ind.Acts 1873, ch. 43, § 22, p. 107, as amended 1949, ch. 120, § 3, p. 310 (§ 3–1218, Burns' Ind.Stat.Anno.1946 Repl.); Davis v. Davis, 1951, 229 Ind. 414, 99 N.E.2d 77; 17 Am.Jur. Divorce and Separation § 907; 27 C.J.S. Divorce § 301. The divorce decree was not a final decree for a recovery of money for the contracts which it approved provided for an uncertain amount of money which could only be determined definitely at some uncertain date in the future after the entry of the final decree of divorce on October 9, 1954. However, the validity of each of the contracts was established by the decree. Davis v. Davis, supra.

■ There are no judgment liens known to common law in Indiana and the foregoing statutes of Indiana control. 3 Collier on Bankruptcy, (14th ed.) § 60.11, pages 794–798.

The facts of the case, primarily within the Webbs' contracts, appear confusing on first analysis because of their inability to sell the real estate and the reading of the two contracts together for construction. The questions in this action would not have arisen if the Webbs had sold the said property as contemplated under the terms of this first contract of August 25, 1954. There would have been a money judgment pursuant to Ind.Acts 1873, ch. 43, § 22, p. 107, as amended 1949, ch. 120, § 3, p. 310 (§ 3–1218, Burns' Ind.Stat.Anno. 1946 Repl.) because the exact amount of the debt would have been ascertained before divorce, or the contract would have been approved by the court and the amount paid and there would have been no intervention of general creditors of Mr. Webb.

However, the Webbs' plans were changed when they were unable to sell the property with the trial of the pending divorce action imminent. Five days before the divorce trial they altered their plans by a supplemental contract, which placed Mrs. Webb in possession and management of the real estate to be sold until it was sold and which contract was also subject to the approval of the court and the granting of a divorce.

The divorce was granted on October 9, 1954 and the court merely approved the Webbs' contracts as to validity.

There being no judgment lien on these facts, for the reason above recited, Mrs. Webb must look to her rights upon the theory of an equitable lien otherwise she joins the ranks of the general creditors of her husband.

■ The validity of the postnuptial contracts in contemplation of divorce between the Webbs and approved by the court upon granting the divorce is unquestioned in Indiana. Ind.Acts 1873, ch. 43, § 20½ as added by 1949, ch. 120, § 2, p. 310 (§ 3–1219a Burns' Ind.Stat. Anno.1946 Repl.); Davis v. Davis, 1951, 229 Ind. 414, 99 N.E.2d 77.

The contracts having been adjudicated valid and the amount of the debt owing Mrs. Webb by Mr. Webb having been stipulated an examination of the contracts discloses that there was no express creation of a lien security for the debt.

■ ■ The findings of facts further disclose, attendant circumstances with the express executory written contracts between the Webbs based upon a valuable and adequate consideration; that the parties clearly indicated their intention to charge the particular described real estate; and that they provided for the sale thereof and appropriated the property by placing Mrs. Webb in actual possession and management of the property until sale thereof. All of which clearly discloses an intention of the parties to create an equitable lien on said property in favor of Mrs. Webb to secure said debt owing by Mr. Webb. Barnes v. American Fertilizer Co., 1925, 144 Va.

692, 130 S.E. 902; Root Mfg. Co. v. Johnson, 7 Cir., 1914, 219 F. 397, affirmed 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934; Hauselt v. Harrison, 1882, 105 U.S. 401, 26 L.Ed. 1075; Fourth Street National Bank v. Yardley, 1897, 165 U.S. 634, 17 S.Ct. 439, 41 L.Ed. 855; Exchange State Bank v. Federal Surety Co., 8 Cir., 1928, 28 F.2d 485, 487; Geddes v. Reeves Coal & Dock Co., 8 Cir., 1927, 20 F.2d 48, 54 A.L.R. 282; Connolly v. Bouck, 8 Cir., 1909, 174 F. 312; Columbia Graphophone Co. v. 330 West Ninety-Fifth Street Corp., D.C.S.D.N.Y.1920, 269 F. 190; Goodnough Mercantile & Stock Co. v. Galloway, D.C.Or.1909, 171 F. 940; Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18; Carmichael v. Arms, 1912, 51 Ind.App. 689, 100 N.E. 302; Application of Mach, 71 S.D. 460, 25 N. W.2d 881; 33 Am.Jur., Liens, §§ 18, 19, 20, 21; 53 C.J.S. Liens § 4 a, b, c. To hold otherwise would be to permit Mr. Webb and those claiming under him including the Trustee in bankruptcy and his general creditors to be unjustly enriched and equity will consider as done that which was intended to be done by the parties and the court finds an equitable lien existed. Restatement of the Law of Restitution § 161; 53 C.J.S. Liens § 4 a.

 Mrs. Webb under Indiana law thus possessed with the security of an equitable lien against the real estate and the funds from the sale thereof to secure her claim, she has only to contend with the claims of the Trustee and general creditors. Since the Trustee in bankruptcy under Indiana law is not a bona fide purchaser for value without notice of her lien and debt, her lien is prior and superior to the Trustee's interests therein. And since the general creditors under Indiana law have no lien claim on said property or said fund her lien is prior and superior to their interests therein. Robertson v. Schlotzhauer, 7 Cir., 1917, 243 F. 324; In Matter of Cox, 7 Cir., 1943, 132 F.2d 881; 3 Collier on Bankruptcy (14 ed.) § 60.40; Restatement of the Law of Restitution, §§ 173 j, 306 and 307.

The Trustee in bankruptcy contends that the equitable lien was not perfected under the bankruptcy act as amended in 1950 by Chap. 70, § 1 within the meaning of paragraph (2) of subsection (a), (64 Stat. p. 24, 11 U.S.C.A. § 96) which provides in part as follows:

" *   *   *. A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition."

Mrs. Webb had not filed and recorded the contracts with the Recorder of Hancock County, Indiana, which the Trustee says the State of Indiana required by the provisions of Ch. 3, § 1, p. 18 of Ind.Acts 1923, (§ 56–119, Burns' Ind. Anno.Stat.1951 Repl.) which provides as follows:

"Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three (3) years, shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded."

and which the Trustee says is required by said amendments to the Bankruptcy Act the provisions of paragraph (6) of

subsection (a) which provides in part as follows:

"(6) The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section. If a transfer is for security and if (A) applicable law requires a * * * filing or recording, or other like overt action as a condition to its full validity against third persons * * * claiming through or under the transferor and (B) such overt action has not been taken, and (C) such transfer results in the acquisition of only an equitable lien, then such transfer is not perfected within the meaning of paragraph (2) of this subsection. * * *."

Restated, the Trustee contends the equitable lien was not perfected on October 9, 1954 and therefore under the bankruptcy act it is deemed to have been perfected within the four months of Mr. Webb's bankruptcy and a preference. Prior to the above subsection of the bankruptcy act all unrecorded equitable liens on real estate were recognized and enforced in bankruptcy proceedings, in accordance with the above cited Indiana recording act as between the parties, as prior and superior to claims of general creditors and trustees in bankruptcy of the bankrupt, excepting as against the claims of bona fide purchasers for value without notice of the same property. 3 Collier on Bankruptcy (14 ed.) § 60.37, p. 884. The purpose of these bankruptcy act amendments in 1938 and 1950 was to avoid secret transfers that were actually preferences to the detriment of general creditors and other claimants. 3 Collier on Bankruptcy (14 ed.) § 60.37.

Mrs. Webb's position is that her equitable lien was not a preference and was completely perfected on October 9, 1954 and not within the four months of Mr. Webb's bankruptcy in accordance with the established test or standard established by the bankruptcy act amendment to judge such transfer and further that the bankruptcy act amendment does not give the Trustee any rights or status not elsewhere conferred in the act.

This is a case of first impression since the enactment of the 1950 amendment to the bankruptcy act.

The instant equitable lien and debt which it secures was not a secret transaction for which the amendment seeks to prevent as it was the subject of two written contracts; it was the subject of a legal complaint publicly filed of record in a divorce proceeding before the Hancock Circuit Court, a court of general jurisdiction and a court of record in Indiana in the county where the real estate was situated and where the Webbs resided and transacted their business; it was the subject of a divorce decree of that court which approved it which by the law of Indiana was entered in a public record, the order book of the court and signed by the presiding judge; and it was partially executed by the acts of Mrs. Webb taking actual possession of the real estate, generally managing it, collecting the rentals, overseeing the repairs, making payments on the mortgage and paying the taxes.

No mythical bona fide purchase could have been accomplished to defeat the lien of Mrs. Webb within the meaning of the amended bankruptcy act (supra) paragraph (2) of subsection (a) for the reason of notice to such persons of the recorded divorce decree containing said contracts and the open and notorious possession of the said real estate by Mrs. Webb. Dyer v. Eldridge, 1893, 136 Ind. 654, 658, 36 N.E. 522; Smith v. Schweigerer, 1891, 129 Ind. 363, 28 N.E. 696; Campbell v. Indianapolis & V. Ry. Co., 1886, 110 Ind. 490, 11 N.E. 482; Jeffersonville, M. & I. Ry. Co. v. Oyler, 1882, 82 Ind. 394; Tuttle v. Churchman, 1881, 74 Ind. 311; Jeffersonville, M. & I. Ry. Co. v. Oyler, 1878, 60 Ind. 383; White v. Sprowl, 1931, 92 Ind.App. 616, 175 N.E. 284; Bastin v. Myers, 1924, 82 Ind.App. 325, 144 N.E. 425; Blair v. Whittaker, 1903, 31 Ind. App. 664, 665, 69 N.E. 182; Chrisman v. Greer, 1931, 239 Ky. 373, 39 S.W.2d 676;

66 C.J.S. Notice § 11; 2 Walsh, Commentaries on the Law of Real Property, 1947, § 219, p. 500.

█ The equitable lien resulting from, and the property settlement contracts entered into by the Webbs, were not required by, nor did the Indiana laws provide for their being recorded. They were not such contracts of conveyance or mortgage of lands or of any interest therein that should have been recorded in the Recorder's office of Hancock County, Indiana, within the meaning of the above quoted recording act.

No perfection of a legal lien by an express judgment of the court in the divorce decree could be accomplished because of the uncertainty of the amount of the debt and time of payment together with the provision that the real estate was to be sold to some unselected third person buyer. Chap. 120, § 3 of Ind. Acts 1949 (§ 3–1218, Burns' Indiana Statutes). The trial court had the power to regard the contract as evidence and render a judgment for alimony in a sum certain secured by a lien. The court also had the power to judiciously recognize from the facts before him the intricacies the husband and wife faced in reaching a meeting of the minds in settling their property interests and chose the method of simply approving the contracts followed in his decree. The court also recognized the Webbs' legal right to contract on such terms as they saw fit within the provisions of chap. 120, § 2 of Ind.Acts 1949 (3–1219a Burns' Indiana Statutes). Mrs. Webb could not and was not obligated therefore to perfect such equitable lien as a legal judgment lien on said property under the bankruptcy act as amended in 1950 by chap. 70, § 1 within the meaning of paragraphs (2) and (6) of subsection (a), (64 Stat. 24) (11 U.S.C.A. § 96). 53 C.J.S. Liens § 6.

The Webbs could have recorded the decree of divorce containing the contracts in the miscellaneous records of the Recorder's office of Hancock County, Indiana, but such would be a useless undertaking as such was not required or provided by the laws of Indiana. Carmichael v. Arms, 51 Ind.App. 689, 699, 100 N.E. 302; In re Van Winkle, D.C.W.D. Ky.1943, 49 F.Supp. 711; 53 C.J.S. Liens § 6.

█ Indiana courts in settling the property rights of a husband and wife in divorce proceedings may follow two methods in their decrees. The court can fix the amount of alimony determined from the evidence including property settlement contracts and enter judgment for such sum; specify the character and method of payment in money and/or property, real or personal, and order the transfer thereof between the parties; specify whether the payments are gross or periodic and termination thereof; specify security, bond, or other guarantee for periodic payments. The effect of this method is that where the judgment is in gross and when payable immediately the judgment shall be a lien on all of the real estate of the judgment debtor then owned or acquired during the life of the judgment; but will not be a legal lien, as distinguished from equitable lien, on periodic future payment decrees unless such decree so provides expressly; and such decree shall be in complete discharge of the husband's obligation to the wife; however, any property, real, personal, or mixed owned by the parties as joint tenants or as tenants by the entirety not expressly included in the decree shall rest in each party equally as tenants in common at the time of the decree. Chap. 120, § 3 of Ind.Acts 1949 (§ 3–1218, Burns' Indiana Statutes). By the other method the court may simply review the property settlement contracts of the parties and if the contracts have been entered into fairly without fraud, duress, or undue influence and the terms thereof are equitable the court shall in its discretion approve such agreement. The effect of this method is that the validity of the contracts are established and the obligations imposed on the husband by the contracts shall be in complete discharge of the husband's legal obligation to such wife. Chap. 120, § 2 of Ind.Acts 1949

(§ 3–1219a Burns' Indiana Statutes); Davis v. Davis, 229 Ind. 414, 99 N.E.2d 77.

Indiana law therefore recognizes that property settlement agreements in contemplation of divorce are unique contracts in that they express the compromise of a husband and wife concerning confused claims and interests resulting from disagreements of the marriage relation. The law does not contemplate the type of contracts in suit as being subject to the general recording statutes of Indiana as such would but confuse the record title of real estate. Such contracts were designed for submission under Indiana law for recording and approval of the divorce court. There is no citable Indiana authority requiring that property settlement agreements of a husband and wife approved in a divorce decree shall be recorded under the statutory general recording requirements for instruments conveyancing of and mortgaging of lands or interests therein. At least one other jurisdiction has had this question before it and held such agreements so approved need not be recorded.

In the case of Barnes v. American Fertilizer Co., 1925, 144 Va. 692, 130 S.E. 902, 910, a property settlement agreement was merely approved by the divorce court. After the divorce a creditor of the husband sought to obtain an attachment lien on the property settled on the wife because the agreement and/or decree were not recorded under the recording statutes of Virginia. The court said:

"* * *, upon the application of the wife in the divorce suit for alimony, suit money, and 'other relief,' the parties came before the court and laid before it a compromise agreement which they had entered into for the settlement of alimony and property rights. Whereupon the court, as it had a right to do, approved and adopted the agreement, and incorporated it in its decree. The act of placing the agreement before the court was the act of the parties; the acts of approving the agreement and of setting it out in the decree were acts of the court; and such rights as are vested in Mrs. Barnes and her children under the decree were by virtue of the judicial sanction and determination of the court and not by the act of the parties in laying the agreement before it. Taking into consideration the history and purpose of the statute, its commonly accepted application from the time of its first enactment, and the cases in which it has been held not to apply, *we are of opinion that the application of the registry statutes was not intended to, nor should, be extended to decrees in controversy in this case,* and that the rights acquired by the wife and children by virtue of these decrees are not subject to the subsequent attachment lien of the creditor of O. O. Barnes, * * *. Nor can it matter whether the agreement was or was not in writing. The terms and conditions of the contract being set forth in the decree itself and being approved by the court, it is surely as solemn and binding as it would have been if incorporated in a separate document and filed with the record. * * *. It seems indisputable that, as the court had jurisdiction to approve the agreement, as it did, such approval could have no less effect than to give them the right, in the absence of fraud, collusion, or imposition upon the court, to enforce compliance with the terms of the agreement in the proper proceedings in the proper forum, *and that they were thereby vested with an equitable interest in the real estate in controversy, which, not being within the operation of the registry statutes,* is superior to the lien of the attachment in this case. * *. After the entry of the decree in this case, Barnes only held the bare legal title to the property as trustee

for his wife and children. * * * "
(Italics added.)

The contracts of the Webbs were not stereotyped but original to meet their problems in arriving at an equitable solution and to obtain a meeting of the minds with a fair consideration as was intended by the applicable laws of Indiana. It was recorded as was intended by the applicable laws of Indiana with the divorce court who approved it and as required by the bankruptcy act amendment of 1950 (supra).

▆ Despite the declared policy of the bankruptcy act amendment of 1950 (supra) against equitable liens it does not forbid the enforcement of equitable liens that comply therewith and the applicable law of the state where created. Cumberland Portland Cement Co. v. Reconstruction F. Corp., D.C.E.D.Tenn. 1953, 140 F.Supp. 739, 753, affirmed Ralph Rogers & Co. v. R. F. C., 6 Cir., 232 F.2d 930; Danais v. M. De Matteo Const. Co., D.C.N.H.1952, 102 F.Supp. 874.

▆ Mrs. Webb's equitable lien complies with the test and standard of the bankruptcy act amendment that no bona fide purchase could be made of the property in question after October 9, 1954 and it complies with the test and standard of the bankruptcy act amendment by her complying with the applicable law of Indiana. The equitable lien of Mrs. Webb's was not made within four months of Mr. Webb's bankruptcy and was not a voidable preference.

It appearing to the court on review that there was no issue of credibility of witnesses or conflict in evidentiary facts in the proceedings before the Referee in bankruptcy; and it further appearing that the findings of facts of the Referee represent his deductions from the divorce decree, contracts, stipulated or admitted facts and other established uncontradicted evidence all of which are before this court; and this court having reopened the proceedings on review of the Referee's order for the introduction of evidence under General Order in Bankruptcy number 47, 11 U.S.C.A. following section 53 the court on review deems it necessary to modify the Referee's findings of fact and to find new facts.

Based upon competent evidence of record the court renders the following findings of fact, conclusions of law and judgment thereon upon the issues of Mrs. Webb's intervening petition and the Trustee in bankruptcy's answer thereto:

### Findings of Fact

1. During the year 1954 and for sometime prior thereto Verneice Geraldine Webb and Harold V. Webb, bankrupt in the above entitled matter, were husband and wife, and citizens and residents of Indiana. Differences developed between the Webbs and they separated. Mr. Webb instituted an action for an absolute divorce against Mrs. Webb in the Hancock Circuit Court, Indiana.

2. The Webbs, after said divorce action was filed, on August 25, 1954, entered into a written property settlement agreement with the intention of adjusting and settling their property rights, alimony, support pendente lite and expenses of the divorce action without submitting these segregated issues in the divorce proceeding to the court for decision except for confirmation and approval of the contracts.

The agreement duly acknowledged and executed covered all of their joint and several property, real, personal, including inchoate interests in real estate, and settled and adjusted all of their property rights, alimony, support pendente lite, and expenses of the divorce action.

This agreement's consummation was dependent upon two contingencies so far as the issues of this case are concerned. The first was the sale of real estate upon which there was a four apartment structure located on the north side of U. S. Highway No. 40 about one mile east of the city of Greenfield, in Hancock County, Indiana. This sale was intended to be completed before the divorce trial and the net proceeds thereof were to be used after the divorce trial to satisfy the

agreed payment or to satisfy a money judgment resulting to the Webbs. The second contingency, was that the agreement was to become effective upon the granting of a divorce and the approval by the court of the agreement if a divorce was granted.

This agreement is set forth in the divorce decree quoted in finding number four.

3. Five (5) days before the divorce trial the real estate described in finding number two had not been sold. The Webbs believed that the sale of said real estate might not be sold for an undetermined time and believing that it would be for their better interests that the trial of the divorce action not be delayed they entered into a supplementary property settlement agreement on October 4, 1954 which was duly executed and sworn to by the Webbs before a Notary Public. This agreement ratified and continued the agreement of August 25, 1954 but modified it subject to the approval of the court as follows:

That in the event said property was not sold before the divorce trial Mrs. Webb was to have the sole right to control and manage said real estate and to receive the net income therefrom as compensation for her supervisory services.

This supplementary agreement is set forth in the divorce decree quoted in finding number four.

This supplementary agreement changed impliedly and expressly many of the terms of the contract of August 25, 1954.

4. On October 9, 1954 the trial of the issues of the divorce action resulted in a judgment for an absolute divorce to Mr. Webb and the court's confirming and approving the entire property settlement agreements of August 24, 1954 and October 4, 1954. The divorce decree containing said agreements is quoted as follows:

"State of Indiana, Hancock County, ss:

| "Harold V. Webb | |
| --- | --- |
| "vs. | Hancock Circuit Court No. 27976 |
| "Verneice Geraldine Webb | April Term, 1957 |

"Be It Remembered, That on the 9th day of October, 1954, the same being the 29th judicial day of the September Term, 1954, of the Hancock Circuit Court, begun, held and continued at the Court House, in Greenfield, Indiana, before the Honorable Samuel J. Offutt, Judge of said Court, the following judgment and decree was rendered in the above entitled cause, to-wit:

"Decree

"Comes now the Plaintiff in person and by his Attorneys, Davis and Williams and comes now the Defendant by her Attorneys, Ging and Free and files her answer of general denial to Plaintiff's complaint, which said answer reads as follows, towit: (H.I.) and this cause is now submitted to the Court for trial, finding, judgment and decree without the intervention of a jury and evidence is introduced and heard and the Court being fully advised in the premises, finds for the Plaintiff and that he is entitled to a decree of divorce from the Defendant on the grounds alleged in his complaint;

"The Court further finds that on the 25th day of August, 1954, Plaintiff and Defendant entered into a property settlement agreement

which agreement is as follows, towit:

"Property Settlement Agreement

"Whereas, Harold V. Webb and Verneice Geraldine Webb, husband and wife, have separated and said husband believes that he has a just cause for an absolute divorce from said Verneice Geraldine Webb and he has filed suit asking for an absolute divorce from said wife in Hancock Circuit Court, bearing Cause Number 27976, and said parties desire to adjust and settle their property rights, alimony, support pending the trial of said action and attorneys' fees,

"Now, Therefore, It Is Hereby Agreed by and between the parties as follows, towit:

"1. (a) Their joint assets consist of furniture, household goods and miscellaneous personal effects. It is understood and agreed that the automatic washer and dryer are considered as part of the realty and are to remain with the apartment building hereinafter referred to.

"(b) Both parties have personal obligations charged to the husband totalling Four Hundred Ninety-Eight Dollars and Seventy-Eight Cents ($498.78) as of August 1, 1954.

"2. The wife's personal automobile is in her name alone.

"3. Title to the following assets is in the husband's name alone, namely:

"a. Real estate upon which there is a four-apartment improvement located on the north side of U. S. Highway N. 40 about one mile east of the city of Greenfield, Indiana valued at approximately Twenty-Nine Thousand and Five Hundred Dollars ($29,500), subject to a mortgage of Eleven Thousand Fifty-One Dollars and Nine Cents ($11,-051.09) payable to The Indianapolis Life Insurance Company of Indianapolis, Indiana.

"b. A business known as the 'National Lumber Company' which is presently located in the same locality as the above described Real estate and which is now being conducted on leased premises. Said business includes the folowing itemized assets and liabilities, towit:

| Assets: | |
|---|---|
| Inventory of stock | $1,054.60 |
| Inventory of paint stock | 1,200.33 |
| Accounts Receivable | 2,540.16 |
| Cash | 2,884.52 |
| Total | $7,679.61 |
| Liabilities: | |
| Note to Greenfield Banking Co. | $1,829.00 |
| Note to American Security | 428.33 |
| "Interest Loan from Verneice G. Webb | 200.00 5.00 |
| Loan from Maude Osborn | 193.96 |
| Accounts payable | 11,164.06 |
| Total | $13,820.35 |

"c. Desk, Typewriter, Filing cabinet, Hand and Machine Tools and Miscellaneous office and mill equipment.

"d. Truck and personal automobile.

"e. Real estate in the same general location upon which there is a Standard Oil Service Station improvement reasonably valued at Twenty-Seven Thousand and Five Hundred Dollars ($27,500), subject to a mortgage of Twenty Thousand Dollars ($20,000) payable to the Indianapolis Life Insurance Company of Indianapolis, Indiana. A lease of said Service Station to the Standard Oil Company by the husband and wife jointly has been included in the aforesaid valuation.

"4. It is hereby expressly agreed and understood that the valuations herein stated are as of August 1, 1954 and the husband is charged with any depreciation of said assets after said date; likewise, the husband will be allowed the benefit of any appreciation of assets after said date except that the valuation of the real estate containing the apartment building will be the actual amount realized from the sale thereof, as hereinafter provided.

"5. It is hereby agreed by and between the parties hereto that the aforesaid apartment building will be sold at the price listed with the selling agent, namely, Twenty-Nine Thousand and Five Hundred Dollars ($29,500) or any other price hereafter agreed to by the parties hereto and, after the expenses of sale, together with any and all taxes owed by both parties hereto, are deducted from the proceeds, the net amount received will be included with the amount of the other assets of both parties, as herein stated, and the amount of all liabilities will be deducted from the amount of total assets. The net value of these parties' interests thereby determined will be equally apportioned between them and the wife will be paid her share from the receipts realized from the sale of the apartment building. The husband will then be the sole owner of the remaining assets of these parties and the wife will not claim nor have any further interest therein. The husband will then be solely responsible for the liabilities herein stated.

"6. The wife will be given the furniture, household goods, appliances (except the automatic washer and dryer) and her personal effects.

"7. The husband will continue to have title and possession of the truck, desk, typewriter, filing cabinet, hand and machine tools and miscellaneous office and mill equipment.

"8. Neither party shall claim any interest in the personal automobile of the other party.

"9. Pending trial of said action and before sale of the said apartment building, the husband will have the sole use of said apartment building, as between these parties, as a personal dwelling and for the purpose of preparing it for sale. He shall charge the time and materials and apartment maintenance against income received from the apartment rentals and any excess of such income will be divided equally between these parties.

"10. The husband is hereby given the right to receive and handle income, not only of the business as provided herein, but also of the apartment. Furthermore, the wife agrees to transfer her interest in the lease of the Standard Oil Service Station to the husband and, in the meantime, she agrees to endorse any checks received thereon. The husband will make due accounting of all income received as rental of the apartment building at the time distribution is made, as herein provided.

"11. Each of these parties shall be given One Hundred Dollars ($100) per month from the said business of the National Lumber Company pending trial of this cause, which shall be charged against the assets of said business before final settlement between the parties hereto as provided herein, so long as there are assets in the business. Each hereby acknowledges that such payment has been received for the month of August, 1954.

"12. All attorneys' fees of both parties here to and the costs of the aforesaid action at law shall likewise be charged against said business assets before final settlement between the parties hereto as provided herein.

"13. Both parties agree that they will each execute any and all

bills of sale, deeds, assignments or other instruments necessary to make effective the provisions hereof.

"14. The husband agrees to prosecute with diligence the aforesaid action for divorce and the wife agrees not to delay the trial thereof unduly. If so, the husband reserves the right to rescind all of the provisions of this agreement.

"15. Excepting those parts of this agreement which are obviously contemplated to be performed earlier, this contract is to be effective upon the court finding the plaintiff's evidence sufficient for the granting of a divorce and upon the court's approval hereof, in which event, the court will be requested to include this property settlement as part of the decree of divorce, if granted.

"16. The wife hereby acknowledges that by agreeing to accept the provisions hereof, she does so in lieu of any and all claims she may have against the husband for interest in property, inchoate or dower interests, alimony, support of any other claims she might have against him or any other person or per- which might be due her by reason of association and connection with the husband in the operation of his trade and business and that she will indemnify the said husband for any loss he might be caused by any claim against him for unknown obligations caused by said wife which are not included in the statement of liabilities herein made.

"s/ Harold V. Webb
　　"Harold V. Webb
　"s/ Verneice Geraldine Webb
　　"Verneice Geraldine Webb

"State of Indiana  ⎫
"County of Hancock ⎬ ss:
　　　　　　　　　 ⎭

"Before me, a Notary Public in and for said County and State, appeared Harold V. Webb and Verneice Geraldine Webb, known to me

as such, who each executed the foregoing instrument on this 25 day of Aug., 1954, and acknowledged that they each did so of their own free will and accord, without duress or any coercion whatever, realizing the full significance and meaning of said agreement, as explained to them by their respective counsel.

"(Seal)　　s/ Waldo C. Ging
　　　　　　　　"Notary Public
"My commission expires: June 9, 1956.
"Approved for form:
"s/ Geo. H. Kistler
"Attorney for Plaintiff

"Attorney for Defendant

"Approved in open court this ——— day of ———, 195 .

"_____
　　Judge, Hancock Circuit Court."
"And the Court further finds that on the 4th day of October, 1954, said parties entered into a supplementary property settlement agreement as follows, towit:

## "Supplementary Property Settlement Agreement

"Whereas Harold V. Webb and Verneice Geraldine Webb, husband and wife, have separated and there is an action by said husband for divorce pending in the Hancock Circuit Court, and

"Whereas the parties thereto have heretofore entered into a property settlement agreement dated the day of August, 1954, and

"Whereas it appears that the proposed sale of the apartment building referred to in said agreement may not be consummated for an undetermined period of time, and

"Whereas both parties believe that it would be for their better interests that trial of said divorce action be not delayed,

"Now, Therefore, It Is Hereby Agreed by and between the parties hereto, as follows, towit:

"Said Property Settlement Agreement dated the      day of August, 1954 is hereby ratified and continued in effect, except as modified or changed as follows, namely:

"In the event the court sees fit to grant a divorce to the husband in said action and subject to the approval of said court, and in the event the sale of said apartment building is not consummated prior thereto, the wife will have the sole right to control and manage said apartment building and to receive the income therefrom and she agrees to pay from said income, first, the mortgage payments as and when they become due; second, all expenses for the operation and maintenance of said apartment building and, third, any balance may be retained by her as compensation for said supervisory services.

"It is further understood and agreed by and between the parties that if an increase is obtained in the amount of the mortgage on said apartment building, said increase will be applied toward payment of the debt to George Keller included in the liabilities referred to in the aforesaid original property settlement agreement and the wife will cooperate in any way which may be necessary to effect such increase in the amount of said mortgage and, furthermore, the obligation of the husband to pay any income to the wife as provided in numerical paragraph 11 of the aforesaid original property settlement agreement will be terminated in lieu of the aforesaid agreement that the wife shall assume the control and maintenance of said apartment building and for the reason that there shall be no further obligation for support after said divorce is granted; and when the wife does assume the control and maintenance of said apartment building, as aforesaid, the provisions of paragraph number 9 in the aforesaid original property settlement agreement will be no longer effective.

"s/   Harold V. Webb
"Harold V. Webb
"s/   Verneice Geraldine Webb
"Verneice Geraldine Webb

"State of Indiana    }
"County of Hancock   }  ss:

"Sworn to and subscribed before me, a Notary Public in and for said county and state this 4th day of October, 1954
"(Seal)  s/   Mary G. Gorman
"Notary Public
"My commission expires: Aug. 31, 1957."

"and that said agreement and said supplemental agreement thereto ought to be confirmed and made a part of this decree.

"It is therefore, considered and adjudged by the Court that the bonds of matrimony heretofore existing between Plaintiff and Defendant, be dissolved and the Plaintiff be and he hereby is granted an absolute divorce from the Defendant.

"It is further considered and adjudged by the Court that the agreement and supplemental agreement thereto is confirmed by the Court and made a part of this decree.

"It is further ordered and decreed by the Court that the parties hereto, pursuant to said agreement, shall pay to Davis and Williams, an additional fee of $150; to George Kistler an additional fee of $35 and Ging and Free a fee of $200 for their services in this cause.

"Costs paid.

"State of Indiana, Hancock County, ss:

"I, Wm. M. Shaffer, Clerk of the Hancock Circuit Court of the County of Hancock, in the State of Indiana, do hereby certify that the foregoing is a full, true, complete

and correct copy of the divorce decree in the above entitled cause, on the day and year first aforesaid as appears of record in my office.

"C. O. B. 108, pages 320, 321 and 322.

"In Testimony Whereof, I hereunto subscribe my name and affix the seal of said Court, at my office at Greenfield, this 3rd day of May, A.D. 1957.

"s/ Wm. M. Shaffer
"Clerk of the Hancock Circuit Court."

5. By the terms of the two contracts certain of the personal property was not included in the proposed cash apportionment payment. No value was fixed thereon but possession was either retained by Mr. or Mrs. Webb, exchanged or transferred to each other. This personal property disposition so far as concerned possession distribution was consummated before the divorce decree of October 4, 1954. These matters are not in issue but are set forth as explanatory of the contract and to delete irrelevant matter.

6. By the terms of the two contracts the Webbs' remaining assets (after disposition property described in finding five) were inventoried and an agreed value fixed to each:

A) The business, National Lumber Company conducted on leased premises valued at $7,679.61 with liabilities of $13,820.35.

B) Real estate upon which there was a Standard Oil Service Station valued at $27,500, subject to a mortgage of $20,-000. This valuation included a lease by the Webbs jointly to the Standard Oil Company.

C) Real estate described in finding number two was inventoried but not valued, except that its value was to be determined as the actual amount realized from a sale thereof, subject to a mortgage of $11,051.09.

It was further agreed by the Webbs that the foregoing valuations (A) and (B) were fixed as of August 1, 1954 and that Mr. Webb is charged with any depreciation and have the benefit of any appreciation as to the property described in (A) and (B) after that date up to and including the final date of apportionment and settlement between them.

7. By the terms of the two contracts the liabilities of the Webbs in addition to those set forth in finding number six (A) and (B) were inventoried and these additional debts totaled $498.78 to which must be added attorney fees and costs of the divorce action which were undetermined and not set forth in the contracts.

8. By the terms of the two contracts the real estate described in finding number two was to be sold before the divorce trial if possible, and if it could not, then after such trial for such price as the parties would mutually agree upon but it was agreed that it would be first offered at $29,500.

It was further agreed after the sale that the expenses of sale and all taxes owed by both parties both undetermined until the sale would first be deducted from the gross sale price.

The net sale price after such deductions and unpaid mortgage was deducted, it was agreed, would then be added to the other assets of the agreed value set forth in finding number six (A) and (B) from which total valued assets were to be deducted the liabilities due at the time of sale of the Webbs set forth in findings six (A) and (B), (C) and seven.

The net value of the Webbs' assets after such deduction of liabilities, it was agreed would determine the claim of Mr. and Mrs. Webb by apportioning and distributing equally between them, at or immediately after the sale of said real estate after the divorce and approval of said contracts, such amount from the cash realized from said sale.

Mrs. Webb it was agreed was to be paid in cash for her said apportioned distribution at or immediately after the

sale of said real estate from the net proceeds of said sale. It being agreed that the priority of payment from said gross sale price being first, the expenses of the sale and all taxes owed by both parties and second, the payment from the net proceeds of said sale of the equal apportionment net settlement to each of the Webbs as described in the preceding paragraph of this finding.

The said property described in finding number two was never sold by the Webbs before or after the said decree of divorce.

9. By the terms of said agreements, it was agreed that the assets described in finding number six (A) and (B) were to become the sole property of Mr. Webb at the time of distribution and final settlement set forth in finding number eight and not before such time. Mrs. Webb agreed further that after such distribution and final settlement she would not claim nor have any further interest in said property described in finding number six (A) and (B). The particular provision of said August 25, 1954 contract reads as follows:

"5. * * * the aforesaid apartment building will be sold * * *. The net value of these parties' interests thereby determined will be equally apportioned between them and the wife will be paid her share from the receipts realized from the sale of the apartment building. *The Husband Will Then Be The Sole Owner Of The Remaining Assets Of These Parties And The Wife Will Not Claim Nor Have Any Further Interest Therein. The Husband Will Then Be Solely Responsible For The Liabilities Herein Stated.*" (Italics added.)

The effect of the provisions of this part of the contract on certain of the property distribution was impliedly changed by the effect of the supplemental contract of October 4, 1954 and the divorce decree of October 9, 1954, such as the termination of Mrs. Webb's alimony claim, inchoate interest in the real estate described in findings six (B) and (C) on rendition of the divorce terminating the marriage and as to personal property. But it does disclose the intention to hold an interest in the assets of Mr. Webb including the real estate described in finding number two and six (C). Mrs. Webb's inchoate interest in the real estate described in finding of fact six (B) and (C) and any interest in personal property of her husband, and her right to alimony and support were incidents of the existence of the marriage relationship and terminated by the entry of the divorce decree terminating the marriage.

Under the complete property settlement agreements as approved by the Hancock Circuit Court in the divorce decree, all the rights of the husband and wife were fixed and established on October 9, 1954.

10. By the terms of said agreements it was provided that if the said property described in finding number two was sold before the decree of divorce the distribution and settlement of the parties was to be effective and consummated upon the granting of the said divorce and the court's confirmation and approval of the contracts. But, if the said property was sold after the decree of divorce and the approval of the contracts by the court then the distribution and settlement of the parties was to be effective and consummated on the date of the sale of said real estate. The particular provisions of said August 25, 1954 contract read as follows:

"14. The husband agrees to prosecute with diligence the * * * divorce and the wife agrees not to delay the trial thereof unduly. If so, the husband reserves the right to rescind all of the provisions of this agreement."

"15. Excepting those parts of this agreement which are obviously contemplated to be performed earlier, this contract is to be effective upon the court finding the plaintiff's evidence sufficient for the granting of a divorce and upon the court's approval hereof, in which event, the

court will be requested to include this property settlement as a part of the decree of divorce, if granted."

The particular provision of said supplementary October 4, 1954 contract reads as follows:

"* * *.

Whereas it appears that the proposed sale of the apartment building referred to in said agreement may not be consummated for an undetermined period of time, and whereas, both parties believe that it would be for their better interests that trial of said divorce action be not delayed, * * *."

11. By their terms of said contracts upon the courts entering the said decree of divorce and approval of the said contracts all of the respective rights of the Webbs as to their joint and several property interests that might have been litigated in said divorce action merged into said contracts as confirmed and approved by said divorce decree and their respective claims to property must be determined from the terms of said contracts performance of which contracts was to be executed at some uncertain length of time after the decree of divorce but fixed as of the time of the sale of said real estate.

12. Before a sale of said property could be or was made by the Webbs involuntary proceedings in bankruptcy were filed January 29, 1957 against Harold V. Webb in the United States District Court, Southern District of Indiana, Indianapolis Division. The matter was referred to the Referee in bankruptcy and Mr. Webb was found to be bankrupt on February 10, 1957. Arthur B. Banta, Trustee in Bankruptcy, who was duly elected, commenced proceedings for the sale of the said real estate described in finding number two. The said property was sold by the Trustee and by appropriate order of May 27, 1957 the Trustee was ordered by the Referee to file answer to the Motion to Intervene of Verneice G. Webb and set a date for the hearing of said issues for July 8, 1957. Said order of sale also appropriately provided:

"and said sale to be free and clear of all other liens and encumbrances, which shall transfer to the proceeds in the hands of said Trustee derived from the sale of said parcels of real estate, to the extent of their validity;".

13. The Webbs remained continuously in possession and at the time of the adjudication of Mr. Webb as a bankrupt, both of the Webbs were in possession of the said real estate described in finding number two. The Webbs occupied separate apartments in the building situated therein and were vacated therefrom by force of the Referee's order of sale.

Mr. Webb, under the terms of the contract of August 25, 1954 was in possession and management of the said real estate.

Mrs. Webb under the terms of the contract of October 4, 1954 was in possession and in exclusive management and maintenance of said real estate continuously to the date of vacation by said order of sale.

14. The Trustee and Verneice G. Webb stipulated to the fact and the court so finds that the amount of the claim of Mrs. Webb should be deemed liquidated under the terms of said contracts (finding of fact eight) in the sum of $4,794.-24. But no agreement or stipulation was entered into as to the validity of Mrs. Webb's claims to a lien against the funds from the sale of said real estate in the hands of the Trustee to satisfy the claim of $4,794.24.

15. None of the claims filed by creditors in these proceedings relate to any transactions involving Mrs. Webb and with respect to which she has incurred any indebtedness.

16. The property rights of the Webbs were fixed by the contract immediately upon the entering of the divorce decree and approval of said contracts on October 9, 1954.

Whatever claims or rights developed and accrued against Mr. Webb on account of taxes of any kind payable by him, or on account of transactions under which creditors' claims accrued, all developed out of Mr. Webb's own transactions which were separate and completely unconnected with any business or business transactions of Mrs. Webb, and in which she had no interest and was not involved in any manner whatsoever.

17. Nothing occurred between the Webbs which changed the rights of the Webbs under said contracts.

18. There were no executed documentary deeds of conveyance or transfer of said personal property or real estate by the Webbs except the said contracts and divorce decree approving said contracts and granting the divorce.

The provisions of the contracts in this respect would have been necessary for the conveyance of title before the decree of divorce and while the Webbs were husband and wife.

19. The said Trustee received said sum of $4,794.24 out of the sale of said real estate because the Webbs' interest in said real estate were co-mingled and could not be separated except by the sale of said real estate pursuant to the terms of said contracts.

The said Trustee did not receive Mrs. Webb's interest in said real estate or the sum of $4,794.24 for Mrs. Webb's interest therein as property of the estate of the bankrupt but only as property of Mrs. Webb and was obligated to distribute the $4,794.24 to Mrs. Webb as soon as the exact amount was ascertainable.

## Conclusions of Law

Upon the foregoing findings of facts the court now states its conclusions of law:

1. The court has jurisdiction of the parties and subject matter.

2. The law is with the intervening petitioner and against the Trustee in bankruptcy, of the estate of Harold V. Webb, bankrupt on the issues of the pleadings.

3. The contracts of the Webbs were lawfully entered into, were not against public policy and were binding and enforceable upon the Webbs and all persons claiming interest in the said property through them, including said Trustee in bankruptcy and all creditors of Mr. Webb.

4. The said Trustee in bankruptcy and the creditors of Mr. Webb are not bona fide purchasers for value without notice of the real estate in question.

5. No judgment lien was created by the said divorce decree in said property or on any of Mr. Webb's property under the laws of Indiana.

6. No express contractual lien at law was created by said written contracts of the Webbs in said property under the laws of Indiana.

7. The retention of the benefits of said contracts by Mr. Webb and those claiming through him, including the said Trustee and Mr. Webb's creditors would unjustly enrich them.

8. At the time of the execution of said contracts, while the Webbs were husband and wife, Mrs. Webb had certain rights in Mr. Webb's property which in lieu of litigating in a divorce action the parties agreed by contracts to resolve and settle should a divorce be granted. The settlement arrived at in said contracts was in effect the foregoing of the right to litigate for a transfer of those rights in said property against Mr. Webb and the fixing of a charge on the property for the payment of cash from the sale of part of the property. In addition thereto, notice was given to the world when the contracts placed Mrs. Webb in possession in charge of income from and management of the property to be sold until it was sold. There was no preexisting debt of Mr. Webb owing Mrs. Webb. The debt was created simultaneously with the charge upon the real estate all as provided in said contracts.

The divorce decree terminated the inchoate rights of Mrs. Webb in all of the real estate of Mr. Webb and terminated all of her rights to personal property and

to an alimony judgment against Mr. Webb. These rights she surrendered in exchange for the rights under the contracts.

All of the essential elements of an equitable lien are present including the existence of a debt, duty, or obligation owing by Mr. Webb, to Mrs. Webb, and the existence of the said property to which that obligation fastens. The contracts and the attendant circumstances including management and possession evinces an intention by the Webbs that a lien shall exist in favor of Mrs. Webb to the amount of the said debt and the court considers as done that which ought to be done and carries out the purpose of the Webbs by establishing the equitable lien.

9. An equitable lien was created in favor of Mrs. Webb against said real property and the resulting fund to secure the payment to Mrs. Webb of the amount due pursuant to the terms of said contracts, by reason of said contracts and all the attendant circumstances and/or to avoid unjust enrichment. The equitable lien of Mrs. Webb in and to said fund in the amount of $4,794.24 in the custody of said Trustee is first and superior.

10. There was a sufficient recording, within the meaning of the Indiana law and Chap. 70, § 1 of 1950 amending the bankruptcy act (64 Stat. 24) (11 U.S. C.A. § 96) by the inclusion of said contracts in the public records of the divorce court for notice of the equitable lien of Mrs. Webb on the property in question.

The application of the registry statutes of Indiana was not intended to, nor should be, extended to the decree of divorce approving the property settlement agreements of these parties.

11. Mrs. Webb being in open and notorious possession of the real estate in question pursuant to said contracts and asserting the rights of owner and/or lienholder, there could not have been within the time from the date of divorce and approval of the contracts to the date of the Referee's order of sale vacating Mrs. Webb from the premises, any bona fide purchaser of said real estate from Mr. Webb, his heirs or assigns. Any such mythical purchaser during such time was charged with notice of Mrs. Webb's possession of the real estate and her assertions and acts of ownership and/or lienholder. Their could be no bona fide purchase during said time within the meaning of Chap. 70, § 1 of 1950 amending the · bankruptcy act (64 Stat. 24) (11 U.S.C.A. § 96).

12. Mrs. Webb's equitable lien was completely perfected on October 9, 1954 within the meaning of the perfection of transfer doctrine in the law of preferences provisions of the United States Code, Title 11, Chap. 6, Sec. 96 as amended (11 U.S.C.A. § 96) so that the transfer was made on October 9, 1954 and not within four months of the bankruptcy petition's being filed against Mr. Webb and was not a voidable preference.

13. So far as any of the findings of facts are conclusions of law they are herewith included as conclusions of law.

14. Mrs. Webb is entitled to recover from said Trustee and the Trustee is obligated to pay the said sum of $4,794.24 to Mrs. Webb.

Mrs. Webb is also entitled to recover the costs of these proceedings from the said Trustee.

The Clerk will enter judgment accordingly.